733 F.2d 267
 20 ERC 2185, 10 Collier Bankr.Cas.2d 949,
11 Bankr.Ct.Dec. 1202,
Bankr. L. Rep. P 69,827, 14 Envtl. L. Rep. 20,475
 PENN TERRA LIMITED, Appellee,
v.
DEPARTMENT OF ENVIRONMENTAL RESOURCES, COMMONWEALTH OF
PENNSYLVANIA, Patti J. Saunders, and Diana J. Stares.
Appeal of DEPARTMENT OF ENVIRONMENTAL RESOURCES,
COMMONWEALTH OF PENNSYLVANIA.
 No. 83-5448.
 United States Court of Appeals,
Third Circuit.
 Argued Dec. 13, 1983.
Decided April 30, 1984.
 
 Dennis W. Strain, Dept. of Environmental Resources, Pittsburgh, Pa., for appellant.
 T. Lawrence Palmer, Wexford, Pa., for appellee.
 Margaret L. McArdle, Pittsburgh, Pa., Bankruptcy Trustee.
 Anthony J. Celebrezze, Jr., Atty. Gen. of the State of Ohio, E. Dennis Muchnicki, Asst. Atty. Gen., Environmental Law Section, Columbus, Ohio, for amici curiae, the Attorneys General and States of Ohio, California, Connecticut, Georgia, Illinois, Indiana, Maine, Maryland, Michigan, Missouri, Minnesota, New Mexico, New York, Oklahoma, South Carolina, Tennessee, Texas, Vermont, and West Virginia, in Support of appellant Department of Environmental Resources.
 Before SEITZ, Chief Judge, and GARTH and BECKER, Circuit Judges.
 OPINION OF THE COURT
 GARTH, Circuit Judge.
 
 
 1
 This case demonstrates the difficulty encountered when two governmental policies--one federal and one state--come into arguable conflict. On the one hand, the federally created bankruptcy policy requires that the assets of a debtor be preserved and protected, so that in time they may be equitably distributed to all creditors without unfair preference. On the other hand, the environmental policies of the Commonwealth of Pennsylvania requires those within its jurisdiction to preserve and protect natural resources and to rectify damage to the environment which they have caused. The potential conflict between these two policies is presented in this case, in which the Commonwealth has attempted to force a company which has petitioned in bankruptcy to correct violations of state antipollution laws, even though this action would have the effect of depleting assets which would otherwise be available to repay debts owed to general creditors.
 
 
 2
 Both the bankruptcy court and the district court found that the actions by the Commonwealth to compel the debtor to correct the environmental damage were prohibited by the automatic stay provision of the Bankruptcy Code, 11 U.S.C. Sec. 362, which generally acts to halt the commencement or continuation of any legal proceedings against a debtor while a bankruptcy administration is pending. The Commonwealth was therefore enjoined from enforcing a state court order which it had obtained, which mandated remedial action on the part of the debtor company. Because we find that the courts below did not give adequate consideration to the statutory exception contained within the automatic stay provision which exempts certain actions by a governmental unit, we reverse and direct that, to the extent that the Section 362 stay remains operative, it be vacated together with the November 4, 1982 permanent injunction against the Commonwealth Court order of May 24, 1982.
 
 I.
 
 3
 The facts in this case are largely undisputed. Penn Terra Limited was the operator of coal surface mines in Armstrong County in western Pennsylvania. The Commonwealth's Department of Environmental Resources (hereafter "DER") found that Penn Terra was operating its mines in violation of various state environmental protection statutes.[1] In February 1981, DER served Penn Terra with a total of 36 citations, both against the corporation and against Harvey Taylor, the president of Penn Terra, for these violations. App. at 70a-71a. Penn Terra apparently never contested that these violations existed. On November 9, 1981, DER and Mr. Taylor entered into a consent order and agreement to rectify these infractions and thus place Penn Terra in compliance with the state statutes. The consent agreement listed the violations, and established a schedule for corrective measures to be taken.[2] Penn Terra, however, apparently did not comply with that schedule.
 
 
 4
 On March 15, 1982, Penn Terra filed a Petition for Bankruptcy under Chapter 7 of the Bankruptcy Code, having previously ceased all operations. In its schedule of assets, Penn Terra listed total property worth $14,000. Of this, $13,500 was designated as "certificates of deposit with DER," which Penn Terra had furnished as bonds for the backfilling operation. The schedule further noted that the cost of reclamation, as required under the consent agreement, would greatly exceed the market and book value of those bonds. The total amount of debts listed was $660,000.
 
 
 5
 On April 14, 1982, DER brought an equitable action in the Commonwealth Court of Pennsylvania, seeking a preliminary injunction against Penn Terra and Harvey Taylor to correct the violations of the state statutes and to enforce the terms of the consent order. DER apparently did not receive a notice of Penn Terra's bankruptcy petition until April 29, 1982. A hearing was conducted on DER's application in Commonwealth Court on May 24, 1982, as previously scheduled; Harvey Taylor appeared but Penn Terra did not, nor did the Trustee. After taking testimony, The Commonwealth Court granted injunctive relief to DER.[3]
 
 
 6
 On May 28, 1982, Penn Terra filed a Petition for Contempt in the bankruptcy court against DER and two of its attorneys, Patti J. Saunders and Diana J. Stares, for proceeding with the Commonwealth Court hearing. Penn Terra contended that this proceeding violated the automatic stay provision of 11 U.S.C. Sec. 362(a). DER responded that the proceedings and the resulting injunction fell within the exception to the automatic stay which exempts actions by governmental units performed pursuant to the police power of the government. 11 U.S.C. Secs. 362(b)(4)-(5).
 
 
 7
 The bankruptcy court found that the actions by DER were, in its opinion, actions to enforce a money judgment, which do not fall within the exception to Sec. 362(a). The bankruptcy judge opined that, given the "obvious insolvency" of the debtor, DER's pursuit of its action in state court has resulted in the entry of a "meaningless order." Pursuant to that ruling, on June 29, 1982, the bankruptcy court preliminarily enjoined DER from enforcing the Commonwealth Court injunction. On November 4, 1982, the preliminary injunction was made permanent.
 
 
 8
 On appeal, the district court affirmed the bankruptcy court's injunction. The district court noted that
 
 
 9
 [i]n the instant case, although the DER's action was ostensibly undertaken to enforce state environmental laws, the effect of the action, in light of the disparity between the costs and funds available to do the reclamation work, was to collect a money judgment against Penn Terra; the purpose was not only to enforce a regulation, but to exhaust the debtor's assets.
 
 
 10
 App. 5-6. Appeal to this court ensued. DER argues that the courts below misconstrued the Bankruptcy Code's automatic stay provision by applying it to the Commonwealth of Pennsylvania, and thus it was error to issue an injunction forbidding DER from enforcing the order obtained from the Commonwealth Court.[4]
 
 II.
 A. The Statutory Framework
 
 11
 The crux of this case depends on an interpretation of 11 U.S.C. Sec. 362, which provides in pertinent part:
 
 Sec. 362 Automatic stay
 
 12
 (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title operates as a stay, applicable to all entities, of--
 
 
 13
 (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
 
 
 14
 (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;
 
 
 15
 (3) any act to obtain possession of property of the estate or of property from the estate;
 
 
 16
 ....
 
 
 17
 (b) The filing of a petition under section 301, 302, or 303 of this title does not operate as a stay--
 
 
 18
 ....
 
 
 19
 (4) under subsection (a)(1) of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;
 
 
 20
 (5) under subsection (a)(2) of this section, of the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;
 
 
 21
 ....
 
 
 22
 The general policy behind this section is to grant complete, immediate, albeit temporary relief to the debtor from creditors, and also to prevent dissipation of the debtor's assets before orderly distribution to creditors can be effected. Indeed, this relief is available even against those claims which in the end are found to be secured and therefore payable in full. Penn Terra claims that this section operates to remove from the Commonwealth the power to enforce its antipollution laws while the automatic stay is in effect.
 
 
 23
 The statute does clearly intend to limit State action at least to some extent. Section 362(a) provides that the automatic stay shall operate against "all entities." The legislative history is clear that, in general, this was intended to extend to governmental entities as well as private ones:
 
 
 24
 With respect to stays issued under other powers, or the application of the automatic stay, to government actions, this section and the other sections mentioned are intended to be an express waiver of sovereign immunity of the Federal Government, and an assertion of the bankruptcy power over State governments under the supremacy clause notwithstanding a State's sovereign immunity.
 
 
 25
 S.Rep. No. 95-989, 95th Cong., 2d Sess. 51, reprinted in 1978 U.S.Code Cong. & Ad.News 5787, 5837; H.Rep. No. 95-595, 95th Cong., 2d Sess. 342, reprinted in 1978 U.S.Code Cong. & Ad.News 5963, 6299 (emphasis added). Indeed, the fact that Congress created an exception to the automatic stay for certain actions by governmental units itself implies that such units are otherwise affected by the stay.
 
 
 26
 Subsections 362(b)(4) & (5), however, return to the States with one hand some of what was taken away by the other. The purpose of this exception is also explained in the legislative history of the Code:
 
 
 27
 Paragraph (4) excepts commencement or continuation of actions and proceedings by governmental units to enforce police or regulatory powers. Thus, where a government unit is suing a debtor to prevent or stop violation of fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws, or attempting to fix damages for violation of such law, the action or proceeding is not stayed under the automatic stay.
 
 
 28
 S.Rep. No. 95-989 at 52, 1978 U.S.Code Cong. & Ad.News at 5787, 5838; H.Rep. No. 95-595 at 343, 1978 U.S.Code Cong. & Ad.News at 6299 (emphasis added).
 
 
 29
 Subsection 362(b)(5), however, creates a further "exception to the exception," in that actions to enforce money judgments are affected by the automatic stay, even if they otherwise were in furtherance of the State's police powers. As the legislative history explains:
 
 
 30
 Paragraph (5) makes clear that the exception extends to permit an injunction and enforcement of an injunction, and to permit the entry of a money judgment, but does not extend to permit enforcement of a money judgment. Since the assets of the debtor are in the possession and control of the bankruptcy court, and since they constitute a fund out of which all creditors are entitled to share, enforcement by a government unit of a money judgment would give it preferential treatment to the detriment of all other creditors.
 
 
 31
 S.Rep. No. 95-989 at 52, 1978 U.S.Code Cong. & Ad.News at 5787, 5838; H.Rep. No. 95-595 at 343, 1978 U.S.Code Cong. & Ad.News at 6299.
 
 
 32
 Our task is to determine: (1) whether DER's actions come within the police or regulatory power of the state; if so, then it must further be determined (2) whether DER's actions are an attempt to enforce a money judgment.[5]
 
 B. General Principles of Construction
 
 33
 At its core, interpretation of section 362 involves questions of federal supremacy and pre-emption. It is undisputable that the Commonwealth is normally empowered to regulate the environment, in its role as protector of the public health and welfare, and thus may rightfully compel adherence to environmental standards. Penn Terra claims, however, that in this instance, the federal government has pre-empted that power through the Bankruptcy Code.
 
 
 34
 While Congress, under its Bankruptcy power, certainly has the constitutional prerogative to pre-empt the States, even in their exercise of police power, the usual rule is that congressional intent to pre-empt will not be inferred lightly. Pre-emption must either be explicit, or compelled due to an unavoidable conflict between the state law and the federal law. See, e.g., Chicago & N.W. Transportation Co. v. Kalo Brick & Tile Co., 450 U.S. 311, 101 S.Ct. 1124, 67 L.Ed.2d 258 (1981). Consideration of whether a state provision violates the supremacy clause starts with the basic assumption that Congress did not intend to displace state law. Maryland v. Louisiana, 451 U.S. 725, 101 S.Ct. 2114, 68 L.Ed.2d 576 (1981).
 
 
 35
 Proper respect, therefore, for the independent sovereignty of the several States requires that federal supremacy be invoked only where it is clear that Congress so intended. Statutes should therefore be construed to avoid pre-emption, absent an unmistakable indication to the contrary. Where the traditional police power of the State is to "be deemed withdrawn by Congress in bankruptcy legislation, evidence of that withdrawal in fit language should be found within the act." In re Chicago Rapid Transit Co., 129 F.2d 1, 5 (7th Cir.), cert. denied, 317 U.S. 683, 63 S.Ct. 205, 87 L.Ed. 547 (1942).
 
 
 36
 Given the general rule that pre-emption is not favored, and the fact that, in restoring power to the States, Congress intentionally used such a broad term as "police and regulatory powers," we find that the exception to the automatic stay provision contained in subsections 362(b)(4)-(5) should itself be construed broadly, and no unnatural efforts be made to limit its scope. The police power of the several States embodies the main bulwark of protection by which they carry out their responsibilities to the People; its abrogation is therefore a serious matter. Congress should not be assumed, therefore, to have been miserly in its refund of that power to the States. Where important state law or general equitable principles protect some public interest, they should not be overridden by federal legislation unless they are inconsistent with explicit congressional intent such that the supremacy clause mandates their supersession. For the same policy reasons, the "exception to the exception" created by subsection 362(b)(5), rendering "enforcement of a money judgment" by a government unit susceptible to the automatic stay, should be construed narrowly so as to leave to the States as much of their police power as a fair reading of the statute allows.
 
 
 37
 There is another reason, specific to this case, why the automatic stay provision should, whenever possible, be read in favor of the States. Concededly, in some individual situations, the exercise of State power, even for the protection of the public health and safety, may run so contrary to the policy of the Bankruptcy Code that it should not be permitted. The statute provides for such exigencies, however. The bankruptcy court, in its discretion, may issue an appropriate injunction, even if the automatic stay is not operative. 11 U.S.C. Sec. 105. Congress explicitly took note of this provision when it excepted government regulation from the automatic stay:
 
 
 38
 Subsection (b) lists seven exceptions to the automatic stay. The effect of an exception is not to make the action immune from injunction.
 
 
 39
 The court has ample other powers to stay actions not covered by the automatic stay. Section 105, of the proposed title 11, derived from the Bankruptcy Act Sec. 2a(15), grants the power to issue orders necessary or appropriate to carry out the provisions of title 11. The district court and the bankruptcy court as its adjunct have all the traditional injunctive powers of a court of equity [statutory citations omitted]. Stays or injunctions issued under these other sections will not be automatic upon commencement of the case, but will be granted or issued under the usual rules for the issuance of injunctions. By excepting an act or action from the automatic stay, the bill simply requires that the trustee move the court into action, rather than requiring the stayed party to request relief from the stay. There are some actions, enumerated in the exceptions, that generally should not be stayed automatically upon commencement of the case, for reasons of either policy or practicality. Thus, the court will have to determine whether a particular action which may be harming the estate should be stayed.
 
 
 40
 S.Rep. No. 95-989 at 51, 1978 U.S.Code Cong. & Ad.News at 5787, 5837; H.Rep. No. 95-595 at 342, 1978 U.S.Code Cong. & Ad.News at 5963, 6298.
 
 
 41
 Therefore, little harm is done to congressional purpose in allowing some latitude in favor of State regulatory powers when interpreting Sec. 362(b), since if, in a particular case, that latitude results in an impermissible dilution of federal bankruptcy policy, then the bankruptcy court may always issue an injunction tailored to fit those circumstances. Such an injunction, however, would be based upon traditional equitable standards, and its propriety would also be reviewable on an abuse of discretion standard. The automatic stay, on the other hand, is not discretionary and must remain in effect unless and until the bankruptcy court later grants relief.
 
 
 42
 We find that the foregoing considerations favoring liberal construction of the exception to the automatic stay provisions found in subsections 365(b)(4)-(5) outweigh the contrary considerations, relied upon by Penn Terra and the bankruptcy court below, favoring a more restrictive construction.[6]
 
 
 43
 C. DER's Suit as an Exercise of Police Power
 
 
 44
 Turning now to the specific issues in this case, it first is clear to us that the actions taken by DER in obtaining and attempting to enforce the Commonwealth Court's injunction falls squarely within Pennsylvania's police and regulatory powers. DER seeks to force Penn Terra to rectify harmful environmental hazards. No more obvious exercise of the State's power to protect the health, safety, and welfare of the public can be imagined. Indeed, both the Senate and the House committee reports on the Bankruptcy Reform Act explicitly acknowledge environmental protection as a part of the State's police power.[7]
 
 
 45
 D. Definition of the Term "Enforcement of a Money Judgment"
 
 
 46
 Having found that DER's actions constitute an exercise of the Commonwealth's police power, the dispositive issue in this case is whether the Commonwealth Court injunction ordering Penn Terra to perform reclamation work is in fact an attempt to enforce a money judgment. The Bankruptcy Court found that it was, as did the district court. Our analysis suggests otherwise.
 
 
 47
 In using the words "enforcement of a money judgment," Congress did not provide any definition for that term. Its meaning must therefore be gleaned from the commonly accepted usage and from whatever indications of congressional intent we find persuasive. "Where Congress uses terms that have accumulated settled meaning under either equity or common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms." NLRB v. Amax Coal Co., 453 U.S. 322, 329, 101 S.Ct. 2789, 2794, 69 L.Ed.2d 672 (1981). In attempting to arrive at a working definition of "enforcement of a money judgment," therefore, we must look to legal custom and practice to determine what was traditionally understood to be a recovery for money damages. This empirical approach is mandated by the fact that, in using the term "enforcement of a money judgment," Congress left us with a term whose words, standing alone, do not convey the legislative intent, and indeed are merely a shorthand notation for common practice as it has gradually developed in our legal history.
 
 
 48
 In common understanding, a money judgment is an order entered by the court or by the clerk, after a verdict has been rendered for plaintiff, which adjudges that the defendant shall pay a sum of money to the plaintiff. Essentially, it need consist of only two elements: (1) an identification of the parties for and against whom judgment is being entered, and (2) a definite and certain designation of the amount which plaintiff is owed by defendant. It need not, and generally does not, contain provisions for its enforcement. See generally 49 C.J.S. Judgments, Secs. 71-82 (describing proper form of money judgment). As the legislative history explicitly notes,[8] the mere entry of a money judgment by a governmental unit is not affected by the automatic stay, provided of course that such proceedings are related to that government's police or regulatory powers.
 
 
 49
 Quite separate from the entry of a money judgment, however, is a proceeding to enforce that money judgment. The paradigm for such a proceeding is when, having obtained a judgment for a sum certain, a plaintiff attempts to seize property of the defendant in order to satisfy that judgment.[9] It is this seizure of a defendant-debtor's property, to satisfy the judgment obtained by a plaintiff-creditor, which is proscribed by subsection 362(b)(5).
 
 
 50
 At least as a matter of form, it is clear to us that the proceeding initiated by DER in Commonwealth Court was not to enforce a money judgment. Indeed, it could not have resulted even in the mere entry of a money judgment. DER brought its action in equity to compel the performance of certain remedial acts by Penn Terra. It did not seek the payment of compensation to the Commonwealth's coffers, and the injunction actually issued by the Commonwealth Court did not direct such payment. This proceeding, therefore, could never have resulted in the adjudication of liability for a sum certain, an essential element of a money judgment. Since this action was in form and substance (see discussion infra), not one to obtain a money judgment, it follows that it could not be one to enforce the payment of such a judgment.
 
 
 51
 Penn Terra contends, however, that whatever the appearance in form of DER's suit may have been, it was in substance an action to obtain and enforce a money judgment, and therefore was affected by the automatic stay. We generally agree, of course, that the legislative intent behind subsection 362(b)(5) should not be defeated by artful pleading that depends on form rather than substance. We must therefore determine whether, although not facially resembling an enforcement of a money judgment, DER's action in Commonwealth Court sought to achieve in actuality what a money judgment was traditionally intended to accomplish and no more.
 
 
 52
 In Jaffee v. United States, 592 F.2d 712 (3d Cir.1979), this Court considered whether a request for an order requiring medical examinations and all necessary medical care and treatment of plaintiff was a request for an injunction, such that its denial would be appealable under 28 U.S.C. Sec. 1291(a)(1), or rather was merely an attempt to collect money damages. The Court noted:
 
 
 53
 We agree with the Government that the request for prompt medical examination and all medical care and necessary treatment, in fact, is a claim for money damages. A plaintiff cannot transform a claim for damages into an equitable action by asking for an injunction that orders the payment of money. Jaffee requests a traditional form of damages in tort--compensation for medical expenses to be incurred in the future. Indeed, his complaint seeks an injunction ordering either the provision of medical services by the Government or payment for medical services. The payment of money would fully satisfy Jaffee's "equitable" claim for medical care.
 
 
 54
 Id. at 715 (citations omitted) (emphasis added).
 
 
 55
 The Jaffee Court also considered whether a petition that the Government "warn members of a class about medical risks" was a request for injunctive or monetary relief. However, the Court there held that:
 
 
 56
 The payment of money cannot satisfy this claim. Although providing the warning will impose an expense on the Government, the creation of expense does not necessarily remove a form of relief from the category of equitable remedies.
 
 
 57
 Id. The Court found, therefore, that this aspect of the appeal was in substance a petition for an injunction.
 
 
 58
 In United States v. Price, 688 F.2d 204 (3d Cir.1982), this Court held that an order requiring the owner of a landfill to conduct a diagnostic study of the toxic hazards emanating from its property was a proper use of the court's equitable powers, even though it required expenditure of money. The Court noted:
 
 
 59
 We do not agree that Jaffee leads to the conclusion that, in this case, plaintiff's request for an injunction was actually a claim for damages. Damages are awarded as a form of substitutional redress. They are intended to compensate a party for an injury suffered or other loss. A request for funds for a diagnostic study of the public health threat posed by the continuing contamination and its abatement is not, in any sense, a traditional form of damages. The funding of a diagnostic study in the present case, though it would require monetary payments, would be preventive rather than compensatory. The study is intended to be the first step in the remedial process of abating an existing but growing hazard which, if left unchecked, will result in even graver future injury, i.e., the contamination of Atlantic City's water supply.
 
 
 60
 ....
 
 
 61
 The fact that an injunction may require the payment or expenditure of money does not necessarily foreclose the possibility of equitable relief....
 
 
 62
 It is not unusual for a defendant in equity to expend money in order to obey or perform the act mandated by the injunction. Injunctions, which by their terms compel expenditures of money, may similarly be permissible forms of equitable relief.
 
 Id. at 212 (emphasis added).[10]
 
 63
 The cases which we have just cited suggest, albeit in other contexts, that an important factor in identifying a proceeding as one to enforce a money judgment is whether the remedy would compensate for past wrongful acts resulting in injuries already suffered, or protect against potential future harm. Thus, it is unlikely that any action which seeks to prevent culpable conduct in futuro will, in normal course, manifest itself as an action for a money judgment, or one to enforce a money judgment. This is consistent with our earlier observations, since a traditional money judgment requires liquidated damages, i.e. a sum certain, and one cannot liquidate damages which have not yet been suffered due to conduct not yet committed. Nor can one calculate such a sum with any certainty. Indeed, the very nature of injunctive relief is that it addresses injuries which may not be compensated by money.
 
 
 64
 The bankruptcy court adopted a totally different functional definition of money judgment, however. In its opinion, it apparently reasoned that a money judgment is anything which costs money to enforce. The court stated:
 
 
 65
 Although DER characterizes its action as a governmental action in the exercise of its police or regulatory powers, it seeks a mandatory injunction requiring the debtor's expenditure of funds for the correction of violations. This Court concludes that the mandatory injunction sought by DER requiring the expenditure of funds is in essence the attempted enforcement of a money judgment. As such, it is subject to the automatic stay by virtue of Sec. 362(b)(5).
 
 
 66
 In re Penn Terra Ltd., 24 B.R. 427, 432 (Bkrtcy.W.D.Pa.1982). The court below drew support from In re Kovacs, 681 F.2d 454 (6th Cir.1982), vacated and remanded, --- U.S. ---, 103 S.Ct. 810, 74 L.Ed.2d 1010 (1983) (Kovacs I). There, as here, the debtor had not complied with various environmental control laws. A state court had ordered him to cease pollution and remove hazardous wastes from the premises. When Kovacs did not comply, the state court appointed a receiver to take possession of the debtor's property and effect a clean-up of the site. The Court of Appeals for the Sixth Circuit found that such action amounted to enforcement of a money judgment and was therefore automatically stayed.
 
 
 67
 To the extent that it found that a state effort to force a debtor to clean up his waste was in essence a money judgment, Kovacs lends support to the bankruptcy court's position.[11] We find, however, that the definition of "money judgment" implied in Kovacs and adopted by the bankruptcy court is unduly broad. Were we to find that any order which requires the expenditure of money is a "money judgment," then the exception to section 362 for government police action, which should be construed broadly, would instead be narrowed into virtual nonexistence. Yet we cannot ignore the fundamental fact that, in contemporary times, almost everything costs something. An injunction which does not compel some expenditure or loss of monies may often be an effective nullity.[12]
 
 
 68
 It appears that, in defining the scope of the exception to the automatic stay, the Bankruptcy Court in this case placed too much weight on the value of preserving the corpus of the debtor's funds and estate under its own exclusive control. Admittedly, that goal is normally central to the statutory scheme of the Bankruptcy Code. As noted at the beginning of this opinion, however, in some instances this policy is in inexorable conflict with other, no less salutary, governmental goals. We believe that the resolution of this conflict is contained in the statute itself. In enacting the exceptions to section 362, Congress recognized that in some circumstances, bankruptcy policy must yield to higher priorities. Indeed, if the policy of preservation of the estate is to be invariably paramount, then one could not have exceptions to the rule. Since Congress did provide for exceptions, however, we may assume that the goal of preserving the debtor's estate is not always the dominant goal.
 
 
 69
 We believe that the inquiry is more properly focused on the nature of the injuries which the challenged remedy is intended to redress--including whether plaintiff seeks compensation for past damages or prevention of future harm--in order to reach the ultimate conclusion as to whether these injuries are traditionally rectified by a money judgment and its enforcement. Here, the Commonwealth Court injunction was, neither in form nor substance, the type of remedy traditionally associated with the conventional money judgment. It was not intended to provide compensation for past injuries. It was not reduceable to a sum certain. No monies were sought by the Commonwealth as a creditor or obligee. The Commonwealth was not seeking a traditional form of damages in tort or contract, and the mere payment of money, without more, even if it could be estimated, could not satisfy the Commonwealth Court's direction to complete the backfilling, to update erosion plans, to seal mine openings, to spread topsoil, and to implement plans for erosion and sedimentation control. Rather, the Commonwealth Court's injunction was meant to prevent future harm to, and to restore, the environment. Indeed, examining the state order,[13] it is clear that erosion control, backfilling, and reseeding were additionally meant to preserve the soil conditions from further deterioration (as well as to rectify a safety hazard).
 
 
 70
 Absent some other clear indication that these proceedings, although appearing in the guise of a request for equitable relief, are actually aimed toward the enforcement of a money judgment, we decline to equate DER's actions, which are those of a governmental unit enforcing the Commonwealth's police power, with those affected by the automatic stay of Section 362(a). We therefore conclude that the suit brought by DER to compel Penn Terra to remedy environmental hazards was properly brought as an equitable action to prevent future harm, and did not constitute an action to enforce a money judgment. The automatic stay provision of 11 U.S.C. Sec. 362 is therefore inapplicable.[14]
 
 VI. CONCLUSION
 
 71
 We will reverse the May 17, 1983 order of the district court, which affirmed the bankruptcy court's November 4, 1982 order. We will also direct that, upon remand to the district court, the district court in turn remand to the bankruptcy court with a direction to vacate the November 4, 1982 injunction of the bankruptcy court, which, pursuant to the automatic stay, enjoined enforcement of the Commonwealth Court of Pennsylvania's order of May 24, 1982.
 
 
 
 [1]
 DER claimed violation of the Pennsylvania Clean Streams Law, Pa.Stat.Ann. tit. 35, Secs. 691.1-.1001 (Purdon 1977 & Supp.1983), and the Bituminous Coal Open Pit Mining Conservation Act, Pa.Stat.Ann. tit. 52, Secs. 1396.1-.23 (Purdon 1966 & Supp.1983)
 
 
 [2]
 As noted in the opinion of the bankruptcy court, In re Penn Terra Ltd., 24 B.R. 427 (Bkrtcy.W.D.Pa.1982), the violations complained of by DER included: mining of a bonded area, failure to maintain adequate backfilling equipment, failure to maintain adequate erosion and sedimentation controls, failure to pump pitwater accumulations, failure to treat mine drainage properly, storage of top strata over gas lines, and failure to seal a deep mine pit. Id. at 430
 The consent agreement required Penn Terra to complete all backfilling by operating one D-8 bulldozer or its equivalent, and one tractor scraper for eight hours a day, five days a week until reclamation of the mines was completed. Penn Terra was also required to submit soil erosion and sedimentation control plans, implement those plans upon approval by DER, remove water from all pits, restore and revegetate the original contour, seal a deep mine entry, submit plans for removal of top strata stored over a gas line, and implement these plans upon approval by DER. The agreement provided that failure to restore the mines within the timetable contained in the agreement would require Penn Terra to rebond the entire area. Id.
 
 
 [3]
 The court ordered Penn Terra to:
 
 
 [1]
 complete all backfilling and final grading at the Hilty Surface Mine by October 15, 1982;
 
 
 [2]
 submit updated erosion and sedimentation plans for the Hilty and Crawford Surface Mines within fifteen days;
 
 
 [3]
 seal the deep mine opening on the Hilty Surface Mine within fifteen days;
 
 
 [4]
 submit for approval by DER a plan for the removal of all top strata stored over the gas line at the Hilty Surface Mine within fifteen days;
 
 
 [5]
 effectuate the plans for erosion and sedimentation control and removal of top strata stored over the gas line within fifteen days of approval of the plan by DER;
 
 
 [6]
 complete top soil spreading, mulching, and seeding of the Hilty Surface Mine by October 15, 1982
 App. at 170-71.
 
 
 [4]
 We have appellate jurisdiction under 28 U.S.C. Sec. 1293 (appeals from final orders in bankruptcy). The district court's order of November 4, 1982, conclusively determined the disputed question as to whether the injunction obtained in the Commonwealth Court by DER could be enforced despite the automatic stay. The district court affirmed the bankruptcy court's order enjoining such enforcement. In doing so, it resolved an issue separate from the merits of the remainder of Penn Terra's bankruptcy proceedings. Furthermore, its order, because of its nature, would otherwise evade effective review. See In re Comer, 716 F.2d 168 (3d Cir.1983) (grant or denial of relief from automatic stay appealable as final order); see also Coopers & Lybrand v. Livesay, 437 U.S. 463, 468, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978); Cohen v. Beneficial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949) (describing "collateral order" doctrine)
 
 
 [5]
 Both the bankruptcy court in issuing a permanent injunction pursuant to the automatic stay of Sec. 362, and the district court in affirming that injunction, relied upon Sec. 362(b)(5), the "exception to the exception." Both courts were persuaded that permitting the enforcement of the Commonwealth Court's order was in essence an attempted enforcement of a money judgment. See In re Penn Terra, 24 B.R. at 433
 
 
 [6]
 We recognize that both Rep. Don Edwards, Chairman of the Subcommittee on Civil and Constitutional Rights of the House Judiciary Committee, and Senator Dennis DeConcini, Chairman of the Subcommittee on Improvements in the Judicial Machinery of the Senate judiciary Committee remarked during the debates on the Bankruptcy Reform Act that "This section is intended to be given a narrow construction in order to permit governmental units to pursue actions to protect the public health and safety and not to apply to actions by a governmental unit to protect a pecuniary interest in the property of the debtor or property of the estate." 1978 U.S.Code Cong. & Ad.News at 6444-45 (remarks of Rep. Edwards); 1978 U.S.Code Cong. & Ad.News at 6513 (remarks of Sen. DeConcini). Those remarks, however, do no more than state the very problem which we are required to resolve
 
 
 [7]
 See Sen.Rep. No. 95-989 at 52, U.S.Code Cong. & Admin.News 1978, pp. 5787, 5838; H.Rep. No. 95-595 at 343, U.S.Code Cong. & Admin.News 1978, pp. 5963, 6299, quoted supra in text at p. 272
 We also acknowledge that exercise of a State's police powers may, depending on the circumstances, take the form of an execution on a money judgment. For example, if a coal mining company conducted operations in violation of applicable surface reclamation laws, then the assessment and collection of a civil penalty to serve as a punishment and deterrence against future violations would be no less an exercise of the police power than if the State had ordered the company to cease operations entirely. See Surface Mining Control and Reclamation Act of 1977, 30 U.S.C. Secs. 1201-1328 (Supp. II 1978) (imposing civil penalties against mine operators who violate provisions of Act). It is important to remember that Sec. 362(b)(5), which prohibits governmental units from enforcing money judgments while the automatic stay is in effect, does not exclude such enforcement by definition from the meaning of "police power," or imply that when a state seeks to execute a money judgment it is not acting for the public health, safety, or welfare. Section 362(b)(5) is merely an exception to the rule that the exercise of police power by a State is not affected by the automatic stay.
 
 
 [8]
 See supra text at p. 274 (quoting committee reports on Bankruptcy Reform Act)
 
 
 [9]
 See Black's Law Dictionary (5th ed. 1979):
 Execution....
 Execution upon a money judgment is the legal process of enforcing the judgment, usually by seizing and selling the property of the debtor.
 Id. at 510.
 
 
 [10]
 In NLRB v. Evans Plumbing Co., 639 F.2d 291 (5th Cir.1981) (per curiam), a case which dealt directly with subsection 362(b), the NLRB had ruled that the employer discharged two employees in violation of subsection 8(a)(3) of the NLRA. It ordered them reinstated with back pay. The Fifth Circuit held that the order, insofar as it required prospective reinstatement (and thus the expenditure of money for salary), fell within the exception in Sec. 362(b) and therefore was not automatically stayed. It also held that the action could proceed as far as the entry of judgment for back pay, but did not address the issue of whether such a judgment could be enforced. Id. at 293. See Ahrens Aircraft, Inc. v. NLRB, 703 F.2d 23 (1st Cir.1983) (Sec. 362 does not prevent Board from entering order requiring back pay)
 
 
 [11]
 The Sixth Circuit itself recognizes that the original Kovacs I opinion has no authoritative value, since it had been vacated by the Supreme Court. In re Kovacs, 717 F.2d 984, 987 (6th Cir.1983) (on remand from Supreme Court), cert. granted sub nom. Ohio v. Kovacs, --- U.S. ---, 104 S.Ct. 1438, 79 L.Ed.2d 759 (1984) (Kovacs II). Kovacs II did not address the issue of a money judgment in the context of a Sec. 362 automatic stay. Because of the Supreme Court remand, the Sixth Circuit has not yet been afforded an opportunity to address that issue. See 717 F.2d at 987 n. 5. Kovacs II was concerned with whether Kovacs' obligation under the state court order met the statutory definitions of "claim or debt" as set forth in 11 U.S.C. Sec. 101(4) & (11). The State of Ohio contended that the obligation did not qualify as a claim or debt and therefore was not dischargeable in bankruptcy. Kovacs II held that Ohio essentially was seeking to obtain a money payment from Kovacs and affirmed Kovacs' discharge. Thus, since different sections of the Bankruptcy Code are at issue which involve different policies and considerations, we are not prepared to declare that our decision is in conflict with Kovacs II. Nor are we prepared to predict that the Sixth Circuit, if confronted with the issue that is presented in this case, would hold that the Commonwealth was enforcing a money judgment by requiring compliance with an environmental injunction. We would disagree with such a result if it did so, for the reasons we have expressed in text
 
 
 [12]
 The distinction between mandatory and prohibitory injunctions advanced by Penn Terra draws no support from the statute. Had Congress intended to restore to the States only the power to enforce prohibitory injunctions, it could have said so, yet no such distinctions are contained in the statute. Moreover, the distinction itself is misleading. Not all mandatory injunctions cost money to perform, and not all prohibitory injunctions are free from cost
 Moreover, it is sometimes difficult to distinguish between a mandatory injunction and a prohibitory one. An order requiring that Company X cease discharging pollutants into the river could be interpreted as a prohibitory injunction. It might also be perceived as a mandatory injunction because such an injunction would have the effect of forcing the Company to transport the wastes elsewhere. While the terms "mandatory" and "prohibitory" may, in general, be useful terms of art for some purposes, if they are to be used as definitional terms which limit the power of States, then they have little utility.
 
 
 [13]
 See supra note 3
 
 
 [14]
 Given the record before us and the narrow issues addressed by the parties, we decline to speculate upon whether the bankruptcy court could have issued a discretionary injunction under 11 U.S.C. Sec. 105 for reasons other than the automatic stay. See In re Penn Terra, 24 B.R. at 433
 DER also contended that, if we read the stay provision of Sec. 362(b) as not affecting the action of a governmental unit, as we have, then the same reading should be given to the bankruptcy removal statute, 28 U.S.C. Sec. 1478, which contains almost identical language respecting the enforcement of a governmental unit's police or regulatory power. We agree with DER that both 28 U.S.C. Sec. 1478 (dealing with removal) and 11 U.S.C. Sec. 362(b)(4)-(5) (dealing with exceptions to the automatic stay) must be read consistently.