In re KAISER STEEL CORPORATION, Debtor(s).

The UTAH DIVISION OF OIL, GAS AND MINING and the Office of Surface Mining, Reclamation and Enforcement, Applicants,

v.

KAISER STEEL CORPORATION, Kaiser Coal Corporation, Kaiser Coal Corporation of Sunnyside, Kaiser Coal Corporation of Utah, et al., Respondents.

Bankruptcy No. 87 B 1552 E.

United States Bankruptcy Court, D. Colorado.

July 12, 1988.

Craig A. Christensen, Harold G. Morris, Jr., and Harrie F. Lewis, Sherman & Howard, Denver, Colo., for Kaiser Steel Corp., debtor.

Christine J. Jobin, Katch, Anderson & Wasserman, Denver, Colo., for Official Unsecured Creditors' Committee of Kaiser Steel Corp.

Harry M. Sterling, Barry J. Weinert, Sterling & Miller, Denver, Colo., for Official Unsecured Creditors' Committee of Kaiser Coal Corp.

Barbara W. Roberts, Asst. Atty. Gen., Hershel J. Saperstein, Glen E. Davies, Sp. Asst. Attys. Gen., Watkiss & Campbell, Salt Lake City, Utah, John O'Brien, Moye, Giles, O'Keefe, Vermeire & Gorrell, Denver, Colo., for State of Utah, Dept. of Natural Resources, Div. of Oil, Gas & Mining, applicant.

Dahil Goss, Asst. U.S. Atty., Stuart A. Sanderson, Dept. of the Interior, Office of the Regional Sol., Denver, Colo., for U.S. Office of Surface Mining Reclamation and Enforcement, applicant.

Glenn W. Merrick, Paul S. Maurer, Davis, Graham & Stubbs, Denver, Colo., for Chase Manhattan Bank, N.A., Banque Paribas, Mellon Bank, N.A., and The Royal Bank of Canada.

## ORDER ON APPLICATION FOR RELIEF FROM STAY

CHARLES E. MATHESON, Chief Judge.

This matter, which is now before the Court, involves the consideration of the interplay between the interests of the State of Utah ("Utah") in protecting its environment and populace, and the public policy expressed by Congress in the enactment of the Bankruptcy Code which enables debtors to seek a fresh start by filing a petition in this Court. Utah has enacted laws to protect against environmental spoilage from mining activities conducted in that state. In order to regulate such activities, entities which propose to conduct mining operations must have a permit. As a condition to the grant of such a permit, the applicant must submit a proposed plan for operations of the mine and for the reclamation of the affected property, including an estimate of the costs necessary to carry out the proposed reclamation activity. A Utah mine operator is required to post a bond to cover the estimated reclamation costs. However, if the operator meets the financial requirements specified by pertinent Utah regulations, the operator can self-bond its reclamation obligations.

In the instant case, the Debtor had, prepetition, obtained permits for three different mining related operations in Utah. As required by the regulations, the Debtor had submitted a proposed plan for its operations and for the reclamation of each of the three properties. The Debtor had also requested and been allowed to self-bond its reclamation obligations in the aggregate amount of approximately $9,000,000.

In February 1987, this Debtor filed its Chapter 11 proceeding under Title 11 of the United States Code. Subsequently, in

March 1987, the Debtor notified Utah that the Debtor no longer met the state's criteria for self-bonding. Utah thereupon responded with notice to the Debtor to either post an alternate bond in the full pre-petition amount within ninety (90) days or cease coal extraction and commence reclamation activity. While the Debtor has continued to conduct mining operations in Utah, it has not posted a bond nor has it otherwise initiated activities to reclaim the affected properties.

The Utah Division of Oil, Gas and Mining and The Office of Surface Mining, Reclamation and Enforcement filed the present application in which Utah asserts its desire and intention to seek compliance with its environmental laws by commencing an appropriate enforcement action against the Debtor in the State of Utah. Utah argues that the commencement of such an action is exempt from the effect of 11 U.S.C. § 362(a) by reason of the provisions of 11 U.S.C. § 362(b)(4) and (5). In its application, Utah prays:

WHEREFORE, Applicant respectfully moves the above-entitled Court as follows:

1. To the extent that any enforcement action undertaken pursuant to State or federal law is barred by the automatic stay under 11 U.S.C. § 362(a), for relief from that stay in order that Applicant may take all appropriate enforcement action against the Debtor pursuant to applicable federal and State law by reason of the Debtor's continuing violation of the provisions of the Utah Acts and implementing regulations as hereby alleged.

2. Alternatively, that the Debtor provide Applicant with adequate protection by furnishing a good and sufficient surety bond or cash bond to secure performance of the permit requirements and particularly the Reclamation Plan for the Sunnyside Mine permit area in the amount of $2,964,000, subject to appropriate future increases; for the Geneva Mine permit area in the amount of $1,707,000, subject to appropriate future increases; and for the Wellington Preparation Plan permit area in the amount of $4,206,000, subject to appropriate future increases.

3. That in the event Debtor is unable to furnish said bonds that there be allowed and paid to Applicant as an administrative expense herein the costs of reclamation for the Sunnyside Mine permit area, the Geneva Mine permit area and the Wellington Preparation Plan permit area in the amounts of $2,964,000, $1,707,000, and $4,206,000, respectively.

The Court notes that the amount of the bond sought by Utah as adequate protection (or, alternatively, as an administrative expense claim, which has since been withdrawn) is the same amount as the amount of the self-bond which had been provided by the Debtor pre-petition.

Recognizing a debtor's need, after the filing of a petition in bankruptcy, for a breathing spell in the reorganization of its affairs, Congress enacted as part of the Bankruptcy Code the provisions of 11 U.S.C. § 362(a). Those provisions, commonly referred to as the automatic stay, give the *debtor such a breathing spell by effectively* staying any post-petition action by pre-petition creditors to enforce claims against the debtor. That stay is not all pervasive, however, since Congress, in Section 362(b), enacted some exceptions. In particular, under Section 362(b), it is specified that the filing of a petition does not operate as a stay (concerning select conduct by governmental units):

(4) under subsection (a)(1) of this section, of the commencement or the continuation of an action or a proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;

(5) under subsection (a)(2) of this section, of the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;....

The legislative history underlying these provisions indicates that their purpose is to except from the coverage of the automatic stay the

...commencement or continuation of actions and proceedings by governmental

units to enforce police or regulatory powers. Thus, where a governmental unit is suing a debtor to prevent or stop violations of fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws, or attempting to fix damages for violation of such a law, the actual proceeding is not stayed under the automatic stay. House Report No. 95–595, 95th Cong. 1st Sess. p. 343 (1977); Senate Report No. 95–989, 95th Cong. 2nd Sess., p. 52 (1978), U.S. Cong. Code & Admin.News 1978, pp. 5787, 5838, 6299.

■ It is clear that, as to its ongoing post-petition mining activities, the Debtor must comply with the laws of Utah and the State has a legitimate interest in enforcing those laws, particularly where the failure to do so would have an adverse impact on the environment. *See, e.g., Brock v. Morysville Body Works*, 829 F.2d 383 (3rd Cir. 1987). In fact, 28 U.S.C. § 959(b) mandates compliance with applicable state law during the post-petition period by a debtor-in-possession which continues to operate a debtor's business.

■ As to the pre-petition activities of the Debtor which were carried on in Utah, that state's claim against the Debtor for violations of its environmental laws, including the failure to reclaim, are clearly "claims" within the meaning of 11 U.S.C. § 101(4) and, as such, are subject to being dealt with in a plan and discharged as part of the Debtor's plan of reorganization. *Ohio v. Kovacs*, 469 U.S. 274, 105 S.Ct. 707, 83 L.Ed.2d 649 (1985); *U.S. v. Whizco*, 841 F.2d 147 (6th Cir.1988); *Southern Railway Co. v. Johnson Bronze Co.*, 758 F.2d 137 (3rd Cir.1985); *In re Security Gas & Oil, Inc.*, 70 B.R. 786, 795 (Bankr.N.D.Ca.1987); 11 U.S.C. § 507 and § 1141(d)(1). However, as to this Debtor's property in Utah, the Debtor's discharge of its personal obligations under a plan, including its pre-petition obligation to reclaim the property, does not free the post-petition landowner (whether the debtor or any successor in interest) from an obligation to see to it that the environment is not being adversely affected by the property's continued unre-

claimed condition. *Ohio v. Kovacs, supra; U.S. v. Whizco, supra; Security Gas & Oil*, 70 B.R. at 793–97.

■ The Court recognizes that enforcement actions by Utah may effectively place in jeopardy the "fresh start" which the Debtor would hope to achieve by way of its reorganization plan. If so, the Debtor may have a remedy under the injunctive provisions of 11 U.S.C. § 105. *Penn Terra Ltd. v. Department of Environmental Resources Commonwealth of Penn.*, 733 F.2d 267 (3rd Cir.1984); *In re Security Gas & Oil, Inc.*, 70 B.R. at 792–96. In fact, the possibility of the utilization of the provisions of Section 105 for such purposes is explicitly recognized in the legislative history. In speaking of the scope of Section 362, and in particular of the exemptions provided under Section 362(b), the House and Senate Reports state as follows:

Subsection (b) lists five exceptions to the automatic stay. The effect of an exception is not to make the action immune from injunction.

The Court has ample other powers to stay actions not covered by the automatic stay. Section 105 of proposed title 11, derived from Bankruptcy Act § 2a(15), grants the power to issue orders necessary or appropriate to carry out the provisions of title 11. The bankruptcy courts are brought within the scope of the All Writs Statute, 28 U.S.C. 1651 (1970), and are given the power of a court of law, equity and admiralty.... Stays or injunctions issued under these other sections will not be automatic upon the commencement of the case, but will be granted or issued under the usual rules for the issuance of injunctions. By excepting an act or action from the automatic stay, the bill simply requires that the trustee move the court into action, rather than requiring the stayed party to request relief from the stay. There are some actions, enumerated in the exceptions, that generally should not be stayed automatically ... Thus the court will have to determine on a case-by-case basis whether a particular action which may be harming the estate should be stayed.

With respect to stays issued under other powers, or the application of the automatic stay, to governmental actions, this section and the other sections mentioned are intended to be an express waiver of sovereign immunity of the Federal government, and an assertion of the bankruptcy power over State governments under the Supremacy Clause notwithstanding a State's sovereign immunity. House Report No. 95–595, 95th Cong. 1st Sess., p. 342; Senate Report No. 95–989, 95th Cong., 2nd Sess., p. 51, U.S.Code Cong. & Admin.News 1978, pp. 5837, 6298.

Thus, in a properly commenced and prosecuted adversary proceeding, this Court can consider whether the purported enforcement of police or regulatory powers by Utah is violative of the broad policies of the Bankruptcy Code. *In re Security Gas & Oil, Inc.*, 70 B.R. at 792–97. The present proceeding, however, is not that case.

■ In the present proceeding, Utah argues that the proposed enforcement of its environmental laws is not *automatically* stayed under Section 362(a)(1) and (2) because of the exceptions provided for under Section 362(b)(4) and (5). In the alternative, Utah seeks a declaration that its proposed enforcement action is not violative of Section 362(a) and seeks relief from the stay imposed by that section.

The court, in *Penn Terra, supra,* properly analyzed the application of Section 362(b) and the availability of alternate relief to the debtor. In applying Section 362(b), this Court need only consider whether the action of Utah is an excepted exercise of its police power. If so, it is exempt from the automatic stay of Section 362(a)(1) and (2) by reason of the exceptions under Section 362(b)(4) and/or (5), unless such action is an attempted "enforcement of" a "money judgment." 11 U.S.C. § 362(b)(5); *Penn Terra, Ltd. v. Department of Environmental Resources, supra; In re Security Gas & Oil, Inc., supra.* As the Court in *Penn Terra* observed, the exemption should be broadly construed and Utah, in seeking to exercise its police power, should not find itself in Utah's present position,

one of uncertainty as to whether it would be violating Section 362(a) if it commences the proposed enforcement action.

Utah has not yet commenced an enforcement action, and this Court has not been apprised of the precise nature of the relief Utah may seek if and when it commences such an action. It is clear, however, that Utah's enforcement of its environmental laws constitutes the exercise by the state of its regulatory or police powers. Further, since no judgments of any kind have been entered in favor of Utah, it is difficult to conceive how any proposed action Utah might take would constitute the "enforcement of" a "money judgment." As the District Court for the District of Colorado has recognized, entry of a money judgment in favor of a governmental unit may be permissible under Section 362(b)(5), but the collection of such a judgment is subject to treatment as a claim as a part of the reorganization process in the Bankruptcy Court. *United States v. Standard Metals Corp.*, 49 B.R. 623, 625 (D.Colo.1985).

In its application filed in this Court, Utah seeks precisely what the Bankruptcy Code in 11 U.S.C. § 362(b)(4) says it may seek without violating the stay mandated by Section 362(a)(1). It may be that in its zeal to enforce its environmental laws, Utah will otherwise transgress the policies of the Bankruptcy Code giving rise to an action by the Debtor for injunctive relief pursuant to 11 U.S.C. § 105. If so, this Court will then be called upon to weigh Utah's interests against the broad policies of the Bankruptcy Code. *See Penn Terra v. Department of Environmental Resources, supra; In re Security Gas & Oil, Inc., supra; In re Oklahoma Refining Co.*, 63 B.R. 562, 565 (Bankr.W.D.Okl.1986); *In re First Federal Corp.*, 42 B.R. 682, 685 (W.D.Va.1984); *see also, N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984). However, those issues are not now before the Court.

Having determined that the proposed commencement of enforcement proceedings by Utah as a remedy for the Debtor's alleged breach of the environmental laws of that state is presumptively an exercise of

its police and regulatory powers pursuant to 11 U.S.C. § 362(b)(4) which is excepted from the automatic stay of 11 U.S.C. § 362(a), no further order need enter herein.