**In re William Lee KOVACS, dba B & W Enterprises, et al.**

**STATE OF OHIO, ex rel., William J. BROWN, Attorney General, et al., Plaintiffs, Appellants,**

v.

**William Lee KOVACS, et al., Defendants, Appellees.**

No. 82–3629.

United States Court of Appeals, Sixth Circuit.

Sept. 22, 1983.

See also, Bkrtcy., 29 B.R. 816.

E. Dennis Muchnicki, Asst. Atty. Gen. (argued), Environmental Law Section, Columbus, Ohio, for plaintiffs, appellants.

E. Hanlin Bavely, William H. Eder, Jr., Steve Williams (argued), Cincinnati, Ohio, for defendants, appellees.

Before KENNEDY and WELLFORD, Circuit Judges, and McRAE, District Judge.*

WELLFORD, Circuit Judge.

Plaintiff-appellant, State of Ohio, has appealed from an order of the United States District Court for the Southern District of Ohio which held that the obligation of William Lee Kovacs, appellee, under an Ohio court order, was dischargeable in Bankruptcy. A prior opinion of this Court addressed the issue of whether the same obligation was subject to the automatic stay provisions of the Bankruptcy Court. *In re Kovacs,* 681 F.2d 454 (6th Cir.1982), *vacated and remanded,* —— U.S. ——, 103 S.Ct. 810, 74 L.Ed.2d 1010 (1983). Kovacs operated an industrial and hazardous waste disposal facility in Hamilton, Ohio. In 1976, proceedings had been instituted by Ohio's Environmental Protection Agency and Department

* Honorable Robert M. McRae, Chief Judge, United States District Court for the Western District of Tennessee, sitting by designation.

of Natural Resources against Kovacs, individually and as an officer in Chem-Dyne Corp., Spray-Dyne Corp., and Iron-Tree, Inc., in the Court of Common Pleas of Butler County, Ohio, charging Chem-Dyne and Kovacs, in particular, with polluting the "waters of the state" with pesticides and industrial wastes. As noted in the prior opinion of this Court, "Kovacs signed a Stipulation and Judgment Entry in the Butler County Common Pleas Court on July 18, 1979, which enjoined him from causing further pollution and required him to remove all industrial wastes from the premises of Chem-Dyne Corporation within twelve months." 681 F.2d at 454.

By the following February Kovacs' compliance with this earlier judgment was substantially behind schedule, and, upon motion by Ohio, the state court appointed a receiver over Kovacs' "non-exempt property and assets along with the assets of related corporate entities.[1] The receiver was also directed to effect the clean-up of the Chem-Dyne site." 681 F.2d at 454 (footnote added).

The pertinent portions of the state court receivership order provided as follows:

It is further ordered that Mr. Jack Zettler be appointed receiver of all property or assets, wherever situated, whether real or personal, tangible or intangible, and all interests, whether legal or equitable, in property or assets, of William Kovacs, except to the extent of any property exempt from the control of a receiver by operation of law;

\*　\*　\*　\*　\*　\*

The receiver shall have power and authority to receive and collect any and all sums of money due or owing to the defendant business entities or defendant Kovacs in any manner, whether the same are now due or shall hereafter become due and payable....

\*　\*　\*　\*　\*　\*

It is further ordered ... that each of the business entities and defendant Kovacs, and all officers, agents, and employees of the Defendant business entities and defendant Kovacs be enjoined and ordered to cooperate fully with the receiver in the performance of such duties or the exercise of such powers.

In July of 1980 Kovacs filed his Chapter 11 petition for personal bankruptcy. The proceedings were converted to straight bankruptcy under Chapter 7 by order of the Bankruptcy Court in September of 1980. The state of Ohio then sought by motion in the state court to "determine Kovacs' current employment status and income." 681 F.2d at 455. Kovacs, in turn, moved in the Bankruptcy Court to restrain these state proceedings pursuant to the "automatic stay" of 11 U.S.C. § 362.[2]

The bankruptcy judge concluded that the State sought the information in state court about Kovacs's current income "as a preliminary to requesting an order from that court which would require that part of debtor's current income be applied" to the receiver's efforts to complete Kovacs's unfulfilled obligation to clean up the industrial wastes from the Chem-Dyne location. The bankruptcy judge de-

---

**1.** The other corporations were stated to be "a part of one larger, closely held, interconnected entity." Stipulation and Judgment Entry, ¶¶ 7, 8.

**2.** The applicable provisions of 11 U.S.C. § 362 are as follows:

§ 362. Automatic stay

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title operates as a stay, applicable to all entities, of—

\*　\*　\*　\*　\*　\*

(2) the enforcement, against the debtor or against property of the estate, of a judgment

obtained before the commencement of the case under this title; ...

(4) any act to create, perfect, or enforce any lien against property of the estate;

(b) The filing of a petition under section 301, 302, or 303 of this title does not operate as a stay—

\*　\*　\*　\*　\*　\*

(5) under subsection (a)(2) of this section, of the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power; ...

termined that Kovacs was entitled to an automatic stay of the state court proceedings under 11 U.S.C. § 362 (Supp.1979), and accordingly enjoined the state of Ohio on October 31, 1980 from proceeding further in state court in its attempt to levy on Kovacs's post-petition earnings. 681 F.2d at 455.

It was that 1980 order of the Bankruptcy Court, affirmed by the District Court, which was appealed to this Court in the earlier proceeding. Concurring with the lower courts' conclusions, this Court held that Ohio's efforts to enforce the Stipulation Judgment and the receivership order were not exempt from the automatic stay provisions, and that the automatic stay of § 362, applied "to deny those [Ohio] units the power *to collect money* in their enforcement efforts." 681 F.2d at 456 (emphasis added). This court further agreed that

the state of Ohio in its state court proceedings was seeking *what in essence amounted to a money judgment* against Kovacs, which was properly subject to the automatic stay.

681 F.2d 456 (emphasis added).[3]

The issue before us in the present appeal arises from an effort by the State of Ohio in the same Bankruptcy Court in October, 1980, to obtain an order that Kovacs' identical obligation under the aforesaid state court judgment is nondischargeable because it is neither a "claim" nor a "debt" as those terms are used in 11 U.S.C. § 727(b).[4]

The Bankruptcy Court in February of 1982 ruled that "the affirmative obligation imposed upon defendant [Kovacs] by the Judgment Entry that he remove and dispose of all industrial and/or other wastes at the subject premises" was dischargeable. The Bankruptcy Judge took pains to note that the state of Ohio never claimed the obligation was exempted from dischargeability under 11 U.S.C. § 523. The rationale for the Bankruptcy Court's decision was:

If plaintiff is successful here, it would be able to levy on defendant's wages, the action prevented by our Prior Decision, after defendant's bankruptcy case is closed and/or the stay of 11 U.S.C. § 362 as interpreted by our Prior Decision is no longer in force.... Plaintiff [Ohio] in discussing the background for the Judgment Entry says that it expected that defendant would generate sufficient funds in his ongoing business to pay for the cleanup. Moreover, we take judicial notice that plaintiff sought discovery with respect to defendant's earnings, the matter dealt with in our Prior Decision, for the purpose of levying upon his wages, a technique which has no application other than in the enforcement of a money judgment. There is no suggestion by plaintiff that defendant can render performance under the affirmative obligation other than by the payment of money. We therefore conclude that plaintiff has a claim against defendant within the meaning of 11 U.S.C. § 101(4), and that defendant owes plaintiff a debt within the meaning of 11 U.S.C. § 101(11). Furthermore, we have concluded that that debt is dischargeable.

The essence of the decision by Bankruptcy Judge Burton Perlman was that "the significance to plaintiff [Ohio] of the affirmative obligation of the Judgment Entry is that the defendant [Kovacs] *pay compensa-*

---

**3.** The Supreme Court granted Ohio's petition for certiorari from this Court's earlier decision and ruled on January 24, 1983:

The judgment is vacated and the case remanded to the United States Court of Appeals for the Sixth Circuit to consider the question of mootness.

—— U.S. ——, 103 S.Ct. 810, 74 L.Ed.2d 1010 (1983).

**4.** 11 U.S.C. § 727(b) provides:

Except as provided in section 523 of this title, a discharge under subsection (a) of this

section discharges the debtor from all *debts* that arose before the date of the order for relief under this chapter, and any liability on a *claim* that is determined under section 502 of this title as if such *claim* had arisen before the commencement of the case, whether or not a proof of *claim* based on any such *debt* or liability is filed under section 501 of this title, and whether or not a *claim* based on any such *debt or* liability is allowed under section 502 of this title. (emphasis added).

*tion ... for pecuniary loss ...*" App. at 13.

On appeal the district court affirmed on the basis of the "law of the case" doctrine, finding "no cogent reason justifying reconsideration of the Sixth Circuit's determination in *In Re Kovacs.*" The district court also agreed that "the State was in fact seeking a money judgment from Kovacs and ... the injunction is dischargeable pursuant to 11 USC § 727(b) ...."

We AFFIRM the District Court's decision, but for a different reason. Since the decision of this Court in *In re Kovacs, supra,* has been vacated by the Supreme Court, it can no longer constitute controlling authority, and the "law of the case" doctrine does not apply.[5]

The State of Ohio takes the position that Kovacs' obligation under the state court orders does not meet the statutory definitions of "claim" or "debt" as set forth in 11 U.S.C. § 101(4) and (11).[6] The obligation to Ohio under the order or injunction, says the State, is merely a right to an equitable remedy. As such, it is not a "claim," and, therefore, not dischargeable in bankruptcy unless (1) the remedy is sought for breach of performance, *and* (2) such breach also gives rise to an alternative right to payment. *See, In re Newton,* 15 B.R. 708 (Bkrtcy.N.D.Ga.1981); *In re Button,* 8 B.R. 692 (Bkrtcy.W.D.N.Y.1981). The State contends that it has no "alternative right to payment" under the order or state laws.

Not surprisingly, Ohio encounters great difficulty in distinguishing its actions to date from an attempt to enforce an alternative right to payment. Ohio's post-petition motion in state court to discover Kovacs'

assets is described in the State's Reply Brief as a mere request,

> that the court permit development of a factual record which might provide a basis for *requiring part of Kovacs' income* "to be applied to the unfinished task of the receivership," *i.e.,* removal of the drums of chemical waste from the site. (emphasis added).

Ohio's Attorney General described this as "an imaginative mechanism for assuring that Kovacs fulfilled his duty to cooperate with the receiver." Although perhaps "imaginative," the efforts of Ohio still reveal the State's clear intention to use "part of Kovacs' income" to satisfy his obligation under the state court order.

Ohio futilely seeks support in the legislative history of § 101(4). As an example of an equitable remedy that would be dischargeable as a claim, Representative Edwards and Senator DeConcini both refer to "a judgment for specific performance [that] may be satisfied by an alternative right to payment in the event that performance is refused." 124 Cong.Rec. H.11089, S.17406 (1978). Ohio does not suggest that Kovacs is capable of personally cleaning up the environmental damage he may have caused. Ohio claims there is no alternative right to payment, but when Kovacs failed to perform, state law gave a state receiver total control over all Kovacs' assets. Ohio later used state law to try and discover Kovacs' post-petition income and employment status in an apparent attempt to levy on his future earnings. In reality, the only type of performance in which Ohio is now interested is a money payment to effectuate the Chem-Dyne cleanup.

---

**5.** The Supreme Court order occurred, of course, after the Bankruptcy Court and the District Court had declared the obligation of Kovacs in controversy to be dischargeable under § 727(b), and after this appeal was filed. The panel of this Court that considered the automatic stay aspect of the case dealing with 11 U.S.C. § 362 has not yet had an opportunity to act on this remand.

**6.** 11 U.S.C. § 101(4) defines a "claim" as a:
  (A) right to payment, whether or not such right is reduced to judgment, liquidated, un-

liquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
  (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured

. . .

11 U.S.C. § 101(11) defines "debt" as "liability on a claim."

If Ohio had elected to have a money penalty assessed against Kovacs for the environmental damage he caused, we would have faced a different question. Proceedings to assess such a penalty would not have been subject to the automatic stay of § 362, although enforcement of the assessment would have been stayed. *In re Tauscher,* 7 B.R. 918 (Bkrtcy.E.D.Wis.1981); *cf. NLRB v. Evans Plumbing Co.,* 639 F.2d 291 (5th Cir.1981) (enforcement proceeding by NLRB). Furthermore, such a penalty might have been exempted from discharge under 11 U.S.C. § 523.[7] Instead of pursuing this or some other route, Ohio has simply claimed that the obligation it seeks to enforce against Kovacs is not a claim or debt.

We agree, however, with the rationale of the prior opinion in *In re Kovacs, supra,* that Ohio is essentially seeking to obtain a money payment from Kovacs. The impact of its attempt to realize upon Kovacs' income or property cannot be concealed by legerdemain or linguistic gymnastics. Kovacs cannot personally clean up the waste he wrongfully released into Ohio waters. He cannot perform the affirmative obligations properly imposed upon him by the State court except by paying money or transferring over his own financial resources. The State of Ohio has acknowledged this by its steadfast pursuit of payment as an alternative to personal performance.

In the absence of any contention by the State of Ohio in the Bankruptcy Court that the judgment obligation of Kovacs is exempted from discharge under some provision of § 523, a discharge under § 727 is warranted.

Accordingly, the judgment of the district court is AFFIRMED.

7. 11 U.S.C. § 523 provides in pertinent part:
(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—
\* \* \* \* \* \*

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity;
(7) to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss, . . .