**In re THOMAS SOLVENT COMPANY, a Michigan corporation, f/k/a Cleaners Solvent Company, Debtor.**

**THOMAS SOLVENT COMPANY, Debtor-in-Possession, Plaintiff,**

**v.**

**Frank J. KELLEY, Attorney General of the State of Michigan; Frank J. Kelley, ex rel., Michigan Natural Resources Commission, and Ronald O. Skoog, Director of the Michigan Department of Natural Resources, Defendants.**

**Bankruptcy No. NK 84–00843.**
**Adv. No. 84–0228.**

United States Bankruptcy Court, W.D. Michigan.

Nov. 1, 1984.

---

Varnum, Riddering, Schmidt & Howlett, James D. Gregg, Grand Rapids, Mich., for plaintiff.

Frank J. Kelley, Atty. Gen., for the State of Mich., Robert P. Reichel, Asst. Atty. Gen., Lansing, Mich., for defendants.

## OPINION

DAVID E. NIMS, Jr., Bankruptcy Judge.

### AUTOMATIC STAY—POLICE OR REGULATORY POWER—INJUNCTIVE RELIEF

Thomas Solvent Company, a debtor-in-possession in a reorganization proceedings under Title 11 U.S.C. Chapter 11, (Thomas) filed a complaint to enjoin the State of Michigan from proceeding with a State Court Action now pending in the Calhoun County Circuit Court and from enforcing any order entered by that court which would require the debtor to expend assets of the estate.

On January 12, 1984, the State brought suit in the Calhoun County Circuit Court against Thomas, which operated a wholesale chemical and solvent storage and distribution business in Battle Creek, Michigan. The complaint alleged that improper storage of toxic chemicals was causing pollution of groundwaters and that the contaminated water was moving toward nearby drinking water supplies. The State Court found that there exists in the groundwater beneath Thomas' facilities "levels of contaminants which pose an immediate threat of potentially irreparable harm to the health and well-being of people in the area * *." The Court ordered Thomas to take certain action to purify and protect the groundwater. The State's recommendation estimated that the cost of such a procedure would be "$2–2½ million."

On April 6, 1984, Thomas filed its voluntary petition under Chapter 11. On April 9, 1984, an order was entered authorizing Thomas to continue to operate and it has continued to operate its business up to the present day. On August 21, 1984, Thomas filed a proposed plan of reorganization which is a liquidating plan. No disclosure statement has been filed, so no action can be taken on the plan.

It is the claim of the State that Thomas must take the action ordered by the State court and that the assets of Thomas, estimated to be of a value far below the costs of the ordered action, be used for this purpose until completely depleted.

Although this proceeding seeks an injunction under 11 U.S.C. § 105, counsel in briefs have discussed at length the automatic stay provisions of 11 U.S.C. § 362.

Subsection (a) of that section creates an automatic stay effective on the filing of a petition for an order for relief. This stay applies to all entities and prohibits actions against the debtor or assets of the estate. Subsection (b) sets forth certain limitations to the stay among which is (b)(5) which provides that no such stay is created—

"(5) under subsection (a)(2) of this section, of the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;"

Thomas claims that the action of the State is to enforce a money judgment.

Four recent Courts of Appeal decisions from two circuits have considered the impact of State laws dealing with environmental pollution problems and various provisions of the Bankruptcy Code. In the first case, In *In re Kovacs*, 681 F.2d 454 (6th Cir.1982), reh. & reh. en banc. den., the debtor, an individual, was *inter alia* ordered by a State court judgment in favor of the State of Ohio to remove all individual wastes from certain premises. After Kovacs filed a Chapter 11 petition, which was converted to Chapter 7, the State of Ohio filed a motion in the State court for a discovery proceeding as to his employment status and income. The bankruptcy judge enjoined Ohio, holding that this was an action to enforce a money judgment and that therefore Kovacs was entitled to be protected by the automatic stay. The decision was affirmed by the district court and court of appeals. *Certiorari* was granted by the United States Supreme Court and the judgment was remanded to the Court of Appeals to consider the question of mootness. *Ohio v. Kovacs*, 459 U.S. 1167, 103 S.Ct. 810, 74 L.Ed.2d 1010 (1983).

In *In re Kovacs* was followed by another decision in the same case, *In re Kovacs*, 717 F.2d 984 (6th Cir.1983), *cert.* granted — U.S. ——, 104 S.Ct. 1438, 79 L.Ed.2d 759. This time the State claimed that the State court judgment was not a dischargeable debt because it was neither a "claim" nor a "debt." The bankruptcy court again held that the judgment was a money judgment and thus a "claim" within the meaning of 11 U.S.C. § 101(4). This decision was affirmed by the district court and court of appeals. While the court of appeals conceded that Kovacs I "could no longer constitute controlling authority" because of its having been vacated, the court did state at p. 988:

"We agree, however, with the rationale of the prior opinion in *In re Kovacs*, *supra*, that Ohio is essentially seeking to obtain a money payment from Kovacs. The impact of its attempt to realize upon Kovacs' income or property cannot be concealed by legerdemain or linguistic gymnastics. Kovacs cannot personally clean up the waste he wrongfully released into Ohio waters. He cannot perform the affirmative obligations properly imposed upon him by the State court except by paying money or transferring over his own financial resources. The State of Ohio has acknowledged this by its steadfast pursuit of payment as an alternative to personal performance.

"In the absence of any contention by the State of Ohio in the Bankruptcy Court that the judgment obligation of Kovacs is exempted from discharge under some provisions of § 523, a discharge under § 727 is warranted."

*Penn Terra Limited v. Department of Environmental Resources, Commonwealth of Pennsylvania*, 733 F.2d 267 (3d Cir.1984), involved a petition for contempt filed by a Chapter 7 debtor against the Department of Environmental Resources (DER) and its attorneys because of action to enforce a state court judgment requiring the debtor to rectify infractions in its strip mining operations. The court of appeals reversed judgments of the bankruptcy and district courts which granted injunctions, relying on the § 362(b)(5) limitation on the automatic stay. The court states at p. 272:

"Subsection 362(b)(5), however, creates a further 'exception to the exception,' in that actions to enforce money judgments are affected by the automatic stay, even if they otherwise were in furtherance of

the State's police powers. As the legislative history explains:

"Paragraph (5) makes clear that the exception extends to permit an injunction and enforcement of an injunction, and to permit the entry of a money judgment, but does not extend to permit enforcement of a money judgment. Since the assets of the debtor are in the possession and control of the bankruptcy court, and since they constitute a fund out of which all creditors are entitled to share, enforcement by a government unit of a money judgment would give it preferential treatment to the detriment of all other creditors. "S.Rep. No. 95–989 at 52, 1978 U.S.Code Cong. & Ad.News at 5787, 5838; H.Rep. No. 95–595 at 343, 1978 U.S.Code Cong. & Ad.News at 6299."

The court then proceeds to use a narrow definition of the term "money judgment" limiting it to "an order entered by a court or clerk, after a verdict has been rendered for plaintiff which adjudges that the defendant shall pay a sum of money to the plaintiff." The court considered *Kovacs I* and *Kovacs II* stating in a footnote at p. 277:

"The Sixth Circuit itself recognizes that the original Kovacs I opinion has no authoritative value, since it had been vacated by the Supreme Court. *In re Kovacs*, 717 F.2d 984, 987 (6th Cir.1983) (on remand from Supreme Court), cert. granted sub nom. *Ohio v. Kovacs*, —— U.S. ——, 104 S.Ct. 1438, 79 L.Ed.2d 759 (1984) (Kovacs II), Kovacs II did not address the issue of a money judgment in the context of a § 362 automatic stay. Because of the Supreme Court remand, the Sixth Circuit has not yet been afforded an opportunity to address that issue. See 717 F.2d at 987 n. 5. Kovacs II was concerned with whether Kovacs' obligation under the state court order met the statutory definitions of 'claim or debt' as set forth in 11 U.S.C. § 101(4) & (11). The State of Ohio contended that the obligation did not qualify as a claim or debt and therefore was not dischargeable in bankruptcy. Kovacs II held that Ohio essentially was seeking to obtain a money payment from Kovacs and affirmed Kovacs' discharge. Thus, since different sections of the Bankruptcy Code are at issue which involve different policies and considerations, we are not prepared to declare that our decision is in conflict with Kovacs II. Nor are we prepared to predict that the Sixth Circuit, if confronted with the issue that is presented in this case, would hold that the Commonwealth was enforcing a money judgment by requiring compliance with an environmental injunction. We would disagree with such a result if it did so, for the reasons we have expressed in text."

It is not clear why the proceeding in Penn Terra was brought by the debtor. Ordinarily such a proceeding would be brought by the trustee. It is the duty of the trustee, an officer of the Federal Courts, to collect and reduce to money the property of the estate and close it as expeditiously as possible. 11 U.S.C. § 704. The estate will be distributed in the manner set forth in 11 U.S.C. § 726. Except for the possibility of a conversion to Chapter 11 or the dismissal of the Chapter 7 case, the corporate debtor is but a cadaver. In the Bankruptcy Reform Act of 1978, Congress recognized this fact when in 11 U.S.C. § 727(a)(1) the useless procedure of granting a discharge to a Chapter 7 corporate debtor was discontinued.

The Third Circuit Court of Appeals again faced this contest between environmental laws and the bankruptcy act in *In re Quanta Resources Corp.*, 739 F.2d 912 (3d Cir.1984). Here, in another Chapter 7 case, the trustee was endeavoring to abandon a site which contained more than 500,000 gallons of waste oil and other chemicals of which 70,000 gallons were contaminated with PCB's, an extremely hazardous chemical. The bankruptcy court allowed the abandonment and the district court affirmed. The majority of the court of appeals held that under *Perez v. Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971) the court must first examine the primary purpose of the State environmen-

tal laws and the Federal Bankruptcy Code and then determine whether the State law is an obstacle to the effectuation of federal objectives. The court relied on 28 U.S.C. § 959(b) as indicating an intent not to abrogate relevant State laws. This section as amended in 1978 provides:

"Except as provided in section 1166 of title 11, a trustee, receiver or manager appointed in any cause pending in any court of the United States, including a debtor in possession, shall manage and operate the property in his possession as such trustee, receiver or manager according to the requirements of the valid laws of the State in which such property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof."

The order of the district court was reversed and remanded for proceedings consistent with the opinion. The court seems to indicate that the cost of cleaning up the site (the State of New York, after the abandonment had cleaned up the facility, except for the contaminated subsoil, at a cost of $2.5 million) might be allowable as a priority claim under 11 U.S.C. § 503(b)(1)(A) being "actual, necessary costs of preserving the estate." However, it was left to the bankruptcy court to determine the priority. A dissenting judge held that 11 U.S.C. § 554(a) was clear and there was no legislative history suggesting that the court could alter or amend the language allowing the trustee to abandon property that is burdensome to the estate.

This Court is of course bound by *Kovacs II* until that decision is reversed or reconsidered. *Roddy v. Tennessee*, 366 F.Supp. 33 (E.D.Tenn.1973). However, I would be of the opinion that even after considering the later cases, Kovacs is properly decided.

The United States Constitution provided power to Congress to "establish *uniform* laws on the subject of bankruptcies throughout the United States." Art. I Sec. 8, Cl. 4 (emphasis added)

Congress recently reviewed the bankruptcy laws when it enacted the Bankruptcy Reform Code of 1978 and more recently,

The Bankruptcy Amendments and Federal Judgeship Act of 1984. Publ Law 98–353, 98 Stat. 333. Although § 362 is not strictly involved in this case or in any of the cases cited above, it is proper to consider it as indicating the intent of Congress. Section 11 of the 1898 Act did not stay suits brought to enforce the police power of the states. Under present § 362(b)(4) & (5), Congress excepted from the automatic stay actions to enforce the "governmental unit's police and regulatory power." House Report No. 95–595, 95 Cong. 1st Sess. 342–3 (1977); Senate Report No. 95–989, 95th Cong., 2d Sess. 51–2 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5838, 6299 states "Thus, where a governmental unit is suing a debtor to prevent or stop violation of * * environmental protection, or attempt to fix damages for violation of such a law, the action or proceeding is not stayed under the automatic stay. Paragraph (5) makes clear that the exception * * does not extend to permit enforcement of a money judgment. Since the assets of the debtor are in the possession and control of the bankruptcy court, and since they constitute a fund out of which all creditors are entitled to share, enforcement by a governmental unit would give it a preferential treatment to the detriment of all other creditors." Thus, Congress was concerned about environmental pollution problems, but it was also concerned that the assets which the court possessed be used to pay off creditors in the manner provided by law.

In sections 726, 503 and 507 of Title 11, Congress added or expanded priority to some classes over § 64 of the 1898 Act, but it did not provide for a priority for environmental claims. Even the Amendments Act of 1984 added a new basis for the denial of dischargeability under § 523(a) but it left untouched the exception to the nondischargeability of fines penalties or forfeiture of "compensation for actual pecuniary loss."

It is also to be noted that Congress continued the subordination of Chapter 11 or Chapter 13 expenses to those of a Chapter

7 proceedings in aborted cases in § 726(b) of Title 11 from the 1952 Amendment to § 64 of the 1898 Act. Senate Report No. 1395, 82d Cong., 2d Sess. (1952) 4 explains the reason for the amendment as follows:

"The third amendment deals with the situation where bankruptcy follows a debtor-relief proceeding which has failed and the fund for distribution, upon liquidation in the ensuing bankruptcy proceeding, is not sufficient to pay the administration costs and expenses of both proceedings. In such event, it has been held that both sets of costs and expenses share pro rata and on a parity (In re Columbia Ribbon Company, 45 Am.B.R. [N.S.] 528 [C.C.A.3d]; United States v. Killoren, 45 Am.B.R. [N.S.] 808 [C.C.A. 8th]). These decisions, while carrying out the language of the act, have in actual practice created a situation which threatens the effective liquidation and administration of the estate in the ensuing bankruptcy proceeding. Unless provision is made for payment of the costs and expenses necessary to liquidate, administer and close the estate in the ensuing bankruptcy proceeding, ahead of all prior incurred and unpaid administration costs and expenses, there is always danger of a breakdown of administration. There should be assurance to the trustee in the ensuing proceeding that the costs and expenses incurred by him, such as bond and insurance premiums, costs of conducting a public sale and compensation for his services and for the services of his attorney, will be paid out of the assets liquidated and administered by him ahead of the prior unpaid costs and expenses."

█ If a governmental unit can completely deplete all of the funds in an estate, or if a trustee cannot abandon an asset for the benefit of the creditors, how can a court find a trustee willing to serve without pay or allowances? How can we have an orderly closing of a bankruptcy case?

█ However, the above discussion does not apply to a Chapter 11 debtor engaged in an ongoing business. 28 U.S.C. § 959(b)

would expressly apply so as to require an operating trustee or debtor in possession to operate its business according to local law. Under the provisions then, the State would have the power to enjoin such a debtor from continuing its operations without taking immediate steps to comply with a state court judgment. A debtor in possession may not preserve its viability as a business entity, yet avoid its responsibility to society, simply by filing a Chapter 11 petition.

For the reasons set forth above, an order may be entered granting a preliminary injunction, enjoining the defendants from taking any action against the debtor or any trustee who may be appointed in this case. However, if a liquidating plan is not confirmed or this case is not converted to a case under Chapter 7 within 90 days of the date of the order entered in accordance with this opinion, the preliminary injunction will be void and an order may then be entered granting relief from the automatic stay.