**In re Dennis/Annette Dominic PHALEN, Debtor(s).**

**Charles T. SIMPSON Personal Representative of the Estate of John W. Culp, Jr., Plaintiff(s),**

**v.**

**Dennis/Annette PHALEN, Defendant(s).**

**Bankruptcy No. 91–3187.**
**Related No. 91–30648.**

United States Bankruptcy Court, N.D. Ohio, W.D.

July 23, 1992.

Charles T. Simpson, Personal Representative of the Estate of John W. Culp, Jr., Lima, Ohio.

Mary Patricia Toth, Toledo, Ohio, for plaintiff.

Randy L. Reeves, Lima, Ohio, for defendants.

## MEMORANDUM OPINION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court on Plaintiff's Motion for Summary Judgment to Determine Nondischargeability of Debt. A Pre–Trial hearing was held at which time the parties decided to have the Court determine the issue based upon the written arguments of counsel. The Court has reviewed the written arguments of counsel, the relevant case and statutory law, as well as the entire record in this case. Based upon that review, and for the following reasons, the Court finds that the debt owed by Defendants in the amount of Fifteen Thousand Dollars ($15,000.00) to be Nondischargeable pursuant to Section 523(a)(9) and Section 523(a)(6) of Title 11 of the United States Code.

## FACTS

The debt in this case arises from a wrongful death settlement agreement filed after the Debtors, Annette Phalen (hereinafter "Phalen") and Dennis Phalen (hereinafter "Dennis") filed for bankruptcy. The relevant facts follow.

Shortly after midnight on July 6, 1988, ten year old John Culp, Jr., a passenger in an automobile driven by Phalen and owned by Dennis, died from injuries sustained in a one car accident in Auglaize County, Ohio. Phalen was reportedly angry that her then boyfriend, Dennis, had not returned promptly from the movies, and was on her way to a friend's house to see if Dennis was there when the accident occurred.

The Ohio State Highway Patrol accident report indicates that Phalen had been drinking alcohol and that her ability was impaired. The report also contains a voluntary statement made by a witness at the accident scene stating that Phalen had consumed 4 cans of Miller Beer during the course of the evening. Dennis indicated Phalen had slurred speech at around 10:00 p.m. when she called him at the movie theater. (Deposition of Dennis Phalen).

Phalen was charged with vehicular homicide, aggravated vehicular homicide and driving under the influence. She later entered a plea of admission to the charge of aggravated vehicular homicide and was sentenced to revocation of her right to operate a motor vehicle for ten (10) years and ordered to attend alcohol counseling. *In Re Annette Bowersock* (June 16, 1989), Auglaize Co. C.P. Juvenile Div. Nos. 202–JV–88, 350–JV–87.

On December 14, 1988, a wrongful death action was filed in the Court of Common Pleas, Auglaize County, Ohio, alleging that Phalen was negligent for her wanton and reckless operation of a motor vehicle and that Dennis was negligent for letting Phalen drive his automobile.

On February 22, 1991, Phalen and Dennis filed a joint petition for bankruptcy under Chapter 7 of the Bankruptcy Code.

On February 26, 1991, a Judgment Entry was filed in the Auglaize County Court of Common Pleas settling "all matters in controversy between the Phalens and Charles T. Simpson." Pursuant to the Judgment Entry, Phalen and Dennis agreed to make monthly payments totaling Five Thousand Dollars ($5,000.00) on or before August 15, 1991, and if they failed to make the payments, a "judgment [would be] entered against [them], jointly and severally in the sum of Fifteen Thousand Dollars ($15,-000.00)...."

On May 16, 1991, Plaintiff filed a Complaint to Determine the Dischargeability of the Post–Petition Settlement amount of Fifteen Thousand Dollars ($15,000.00) plus interest. An Amended Complaint was filed on June 26, 1991. In the answer to the Amended Complaint, Debtors admitted they settled the wrongful death suit on February 26, 1991, pursuant to the Judgment Entry filed in the Common Pleas Court of Auglaize County. Debtors also admitted to the allegations contained in paragraph 16 of the Plaintiff's Amended Complaint which alleged that "Dennis D. Phalen and Annette M. Phalen settled and resolved Plaintiff's [Charles T. Simpson's] state court cause of action against them after obtaining relief in bankruptcy court."

Plaintiff's Motion for Summary Judgment is grounded on three arguments: (1) The post-petition settlement of the wrongful death suit, a pre-petition debt, is nondischargeable under 11 U.S.C. § 727(a)(1) because the right to payment did not arise until after the bankruptcy petition was filed; (2) The debt is nondischargeable as a matter of law under 11 U.S.C. § 523(a)(9) because Phalen was intoxicated and driving a motor vehicle when the accident occurred; and (3) The debt is nondischargeable as a matter of law under 11 U.S.C. § 523(a)(6) because driving a motor vehicle while under the influence of alcohol is willful and malicious conduct.

## LAW

*A. Post-petition Settlement of Prepetition State Court Claim*

■ The first issue presented by Plaintiff's Motion is whether the Debtors' post-petition settlement of a pre-petition claim is a new debt arising after the bankruptcy petition was filed and therefore nondischargeable as a matter of law. Sec. 11 U.S.C. § 727(b) affords protection of a discharge for debts that arise before the date of the order for relief. Section 727(b) states:

Except as provided in section 523 of this title, a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter, and liability on a claim that is determined under section 502 of this title as if such claim had arisen before the commencement of the case, whether or not a proof of claim based on any such debt or liability is filed under section 501 of this title, and whether or not a claim based on any such debt or liability is allowed under section 502 of this title.

11 U.S.C. § 727(b).

Plaintiff concedes that the wrongful death action was a pre-petition "contingent claim," but by virtue of the post-petition settlement, a new claim or right to payment arose. Plaintiff relies on the often criticized case of *In re Frenville*, to argue that there is a difference between when a claim arises and when there is a "right to payment." 744 F.2d 332 (3d Cir.1984), *cert. denied* 469 U.S. 1160, 105 S.Ct. 911, 83 L.Ed.2d 925 (1985). The definition of "claim" is broadly defined by the Code as a:

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, dispute, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(4) (1982).

Legislative history reveals congressional intent for the word "claim" be given the

"broadest possible definition and ... that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in [a] bankruptcy case." H.R.Rep. No. 595, 95th Cong., 2d Sess. 309, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5963, 6266; *see also* S.Rep. No. 989, 95th Cong.2d Sess. 21–22, *reprinted* in 1978 U.S.Code Cong. & Admin.News 5787, 5807–08.

In addition, both the United States Sixth Circuit Court of Appeals and the Supreme Court of the United States have held that the term "claim" should be read very broadly in order to facilitate the "fresh start" policy of the Bankruptcy Code. *Ohio v. Kovacs*, 717 F.2d 984 (Cir. 6, 1983), *aff'd*, 469 U.S. 274, 278–79, 105 S.Ct. 705, 707–08, 83 L.Ed.2d 649 (1985); *see also, In re Edge*, 60 B.R. 690 (Bkrtcy.M.D.Tenn. 1986) (for a discussion on when a claim arises and holding that a right to payment arises at the time of the debtor's prepetition misconduct).

Moreover, the situation presented in *Frenville* is distinguishable from the issues presented here. In *Frenville,* the court addressed the issue of whether the automatic stay provisions of Sec. 362(a) were applicable when third party creditors sought to file a post-petition lawsuit seeking indemnification or contribution indemnification for a debtor's acts occurring prepetition. 744 F.2d at 333–34. The Court held that the automatic stay provisions did not apply because New York state law barred the commencement of a lawsuit by third parties seeking indemnification or contribution until a defendant serves his answer to the plaintiff in the primary lawsuit. *Id.* at 335, 337–38. The defendant/debtor had not filed his answer, so the third party seeking indemnification and contribution could not file their suit and therefore had no claim and thus no right to payment. *Id.* at 335.

In contrast, the Plaintiff in this case clearly filed his lawsuit before the Defendants filed their bankruptcy petition. The Judgment Entry reveals that the negotiation and settlement agreement occurred pre-petition. The agreement provides that the Phalen's were to begin making monthly payments toward the settlement on September 1, 1990. This Court finds that the actual filing of the Judgment Entry merely memorialized a pre-petition settlement agreement and is not a post-petition debt and would be subject to discharge.

### B. 11 U.S.C. § 523(a)(9)

■ Plaintiff argues in the alternative that the debt is nondischargeable as a matter of law under 11 U.S.C. § 523(a)(9). Section 523(a)(9), as amended on November 15, 1990, reads as follows:

(a) A discharge under section 727, ... of this title does not discharge an individual debtor from any debt—

(9) for death or personal injury caused by the debtor's operation of [a] motor vehicle if such operation was unlawful because the debtor was intoxicated from using alcohol, a drug, or another substance.

11 U.S.C. § 523(a)(9).

■ To determine nondischargeability of a debt under § 523(a)(9), a court must determine by a preponderance of the evidence that the debtor was legally intoxicated under state law and that the liability resulted from the operation of a motor vehicle. *Whitson v. Middleton,* 898 F.2d 950, 952 (4th Cir.1990); *see also Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) (preponderance-of-the-evidence standard of proof applies to all of § 523(a)'s exceptions). Legal intoxication, however, does not have to be specifically adjudicated by a state court for the purposes of determining nondischargeability under § 523(a)(9). *Whitson v. Middleton,* 898 F.2d at 952.

In Ohio, "under the influence of intoxicating liquor", is defined as "the condition in which a person finds himself after having consumed some intoxicating beverage in such quantity that its effect on him adversely affects his actions, reactions, conduct, movement or mental processes or impairs his reactions to an appreciable degree, thereby lessening his ability to oper-

ate a motor vehicle." [1] *City of Toledo v. Starks*, 25 Ohio App.2d 162, 163, 267 N.E.2d 824, 825–26 (1971). Circumstantial evidence will sustain a conviction for driving under the influence. *State v. Neff*, 104 Ohio App. 289, 148 N.E.2d 236 (1957); *Starks*, 25 Ohio App.2d at 163, 267 N.E.2d at 827. "Proof of factual circumstance concerning the defendant's conduct and activities preceding and following the driving of the vehicle [one] is charged to have driven while under the influence of intoxicating liquor is relevant to the ultimate issue of whether [a] defendant was driving a vehicle while under the influence of intoxicating liquor." *Starks*, 25 Ohio App.2d at 163, 267 N.E.2d at 827.

Phalen was initially charged with "driving while under the influence." The report of the police officer at the accident scene stated that Phalen's driving ability was impaired due to alcohol. This report combined with the statements of others as to Phalen's inebriated state were sufficient to support the DUI charge. The matter was not pursued further, solely as a result of the plea bargain which, among other things, resulted in a revocation of her motor vehicle operators license for ten (10) years and an order that she attend alcohol counseling.

In a strikingly similar case, a court held that a debt was nondischargeable under § 523(a)(9), even though the debtor was not specifically charged or convicted of driving while intoxicated. *Whitson*, 898 F.2d at 952. In *Whitson*, a Virginia case, the defendant struck a motorcyclist and was charged and convicted of reckless driving. *Id.* The injured motorcyclist subsequently filed a damage suit and a default judgment was entered against the defendant for Seven Hundred Thirty-three Thousand, Two Hundred Seventy Dollars ($733,270.00) in damages. *Id.* The defendant filed bankruptcy and the bankruptcy court applied the Virginia law for driving under the influence in determining that the debt was nondischargeable under 11 U.S.C. § 523(a)(9). *Id.* Under Virginia law, "[a]ny person who has drunk enough alcoholic beverages to so affect his manner, disposition, speech, muscular movement, general appearance or behavior, as to be apparent to observation, shall be deemed to be intoxicated." Va.Code Ann. § 4–2 (Michie 1991). The court found that there was enough evidence presented to sustain a finding by a preponderance of the evidence that the debtor was legally intoxicated and therefore found the debt nondischargeable. *Whitson*, 898 F.2d at 952.

Similarly, this Court finds that there is a preponderance of evidence to sustain a factual finding that Phalen was intoxicated at the time of the tragic accident and that the debt is nondischargeable under § 523(a)(9).

*C. 11 U.S.C. § 523(a)(6)*

■ Plaintiff further asserts that the debt is nondischargeable under § 523(a)(6) which provides:

(a) A discharge under section 727, ... of this title does not discharge an individual debtor from any debt—

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

11 U.S.C. § 523(a)(6) (1992).

In *In re Ustaszewski*, this court held that the operation of a vehicle while under the influence of an intoxicant is conduct which is so certain to bring about a particular result that a presumption arises as to the driver's intent to bring about that result. Such conduct expresses sufficient disregard for the rights of other[s] so as to permit the conduct to be characterized as willful and malicious for purposes of 11 U.S.C. § 523(a)(6).

71 B.R. 282 (Bkrtcy.N.D. Ohio 1987). The record in this case shows that Phalen was under the influence of alcohol and that

---

**1.** Ohio Revised Code § 4511.19 prohibits driving while under the influence of alcohol and in pertinent part provides:

(A) No person shall operate any vehicle, street car, or trackless trolley within this state, if any of the following apply:

(1) The person is under the influence of alcohol, a drug of abuse or alcohol and a drug of abuse.

she was angry with Dennis when she drove his automobile on the evening of July 6, 1988. Her willful and malicious conduct resulted in John Culp, Jr.'s death, and such conduct must preclude her from being discharged from that debt.

Accordingly, it is

ORDERED that Plaintiff's Motion for Summary Judgment be, and is hereby, GRANTED.

It is FURTHER ORDERED that the Judgment Entry against Debtors for Fifteen Thousand Dollars ($15,000.00) dated February 26, 1991, be, and is hereby, held to be NONDISCHARGEABLE under 11 U.S.C. § 523(a)(9) and 11 U.S.C. § 523(a)(6).