**In re Daniel Ross CRUMP, Debtor.**

**Jamie Hrynciw, Plaintiff,**

**v.**

**Daniel Ross Crump, Defendant.**

**Bankruptcy No. 03–3014.**

United States Bankruptcy Court,
N.D. Ohio.

Dec. 3, 2004.

Herbert E. Adams, Fremont, OH, for Debtor.

C. Drew Griffith, Perrysburg, OH, for Plaintiff.

### DECISION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court after a Trial on the Plaintiff's Complaint to Determine Dischargeability. The Plaintiff brings her complaint pursuant to the statutory exception to discharge sets forth in § 523(a)(9) relating to the operation of a motor vehicle while intoxicated. At the conclusion of the Trial, the Court took the matter under advisement. The Court has now had the opportunity to review both the evidence submitted in this case and the arguments made by the Parties. Based upon that review, and based upon an examination of applicable law, the Court finds that the debt at issue is DISCHARGEABLE.

The facts giving rise to this matter stem from an auto accident that occurred between the Parties. On July 27 of the year 2000, the Defendant, Daniel Crump, while driving to work ran a stop sign, colliding then into an automobile driven by the Plaintiff, Jamie Hrynciw. The force of the impact caused both vehicles to leave the road.

Police were dispatched to the accident scene at 6:54 a.m. Due to the severity of the injuries she sustained in the accident, the Plaintiff was immediately taken to the hospital by air ambulance. Later, the Defendant was also taken to the hospital where, based upon the presiding police officer's suspicion of intoxication, a blood sample from the Defendant was drawn at 9:15 a.m. for analysis. The results of this test set forth that the Defendant had a concentration of alcohol in his blood of 31 mg/dL per a "serum sample type."

### LEGAL ANALYSIS

Pursuant to 28 U.S.C. § 157(b)(2)(I), a matter concerning the dischargeability of a debt is a core proceeding over which this Court has been conferred with the jurisdictional authority to enter final orders and judgments. 28 U.S.C. §§ 157(a)/(b)(1) and 1334.

Section 523(a)(9), the statutory provision upon which the Plaintiff relies for her complaint to determine dischargeability, sets forth that:

A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

for death or personal injury caused by the debtor's operation of a motor vehicle if such operation was unlawful because the debtor was intoxicated from using alcohol, a drug, or another substance[.]

This section, now modified, was added to the Bankruptcy Code in 1984 to remedy the problem raised by certain cases wherein proof of drunk driving was held not to be sufficient proof of the willful and malicious intent necessary to hold a debt nondischargeable under § 523(a)(6). *Bryant v. Straup (In re Straup)*, 90 B.R. 481, 483 (D.Utah 1988). In order to sustain an action under this section, the burden is placed upon the plaintiff to establish the existence of three elements: (1) a debt arising as the result of injury to the person, as opposed to property; (2) the debtor was operating a motor vehicle while intoxicated; and (3) causation—that is, the first element came into existence as the proximate result of the second element. *United Servs. Auto. Assn. v. Pair (In re Pair)*, 264 B.R. 680, 684 (Bankr.D.Idaho 2001). For these elements, the evidentiary standard, as with other exceptions to dischargeability, is a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) (preponderance-of-the-evidence standard of proof applies to all of 523(a)'s exceptions).

■ In this case, the threshold issue presented to the Court at the Trial concerned the second element of the § 523(a)(9) test: whether the Debtor was intoxicated at the time of the Parties' accident? For purposes of § 523(a)(9), a person is deemed intoxication when, but not before, the person's operation of the vehicle would be "unlawful." In turn, the statute's utilization of the term "unlawful" denotes that applicable nonbankruptcy law is to be applied—here, this being Ohio law—when making a determination of intoxication. *Simpson v. Phalen (In re Phalen)*, 145 B.R. 551, 554 (Bankr.N.D.Ohio 1992). In applying applicable nonbankruptcy law, however, it is not necessary that the issue of intoxication have been previously adjudicated; § 523(a)(9) empowers a bankruptcy court to make an independent determi-

nation as to whether, under applicable law, a person operated a motor vehicle while unlawfully intoxicated. *Id.*

Section 4511.19 of the Ohio Revised Code makes it unlawful for any individual to operate a motor vehicle while intoxicated. From an evidentiary standpoint, O.R.C. § 4511.19 prescribes two methods by which intoxication may be established. First, § 4511.19 sets forth what has been termed a "per se" offense where, based upon the amount of alcohol in the vehicle operator's system, intoxication is conclusively presumed. O.R.C. § 4511.19(A)(1)(b)-(I). When, as here, a serum sample type is used, such a presumption of intoxication will arise when a "person has a concentration of ninety-six-thousandths of one percent or more ... by weight per unit volume of alcohol in the person's blood serum or plasma." O.R.C. § 4511.19(A)(1)(c). But since the evidence presented shows that the Defendant had a concentration of alcohol in his blood of only 31 mg/dL—below a third of the legal limit—no "per se" violation exists.

In the absence of a "per se" violation, however, § 4511.19 also sets forth a subjective test whereby it is simply provided that it shall be unlawful for any person to operate a motor vehicle while "under the influence of alcohol, a drug of abuse, or a combination of them." O.R.C. § 4511.19(A)(1)(a). The Ohio Supreme Court has defined "under the influence" to mean "the condition in which a person finds himself after having consumed some intoxicating beverage in such quantity that its effect on him adversely affects his actions, reactions, conduct, movement or mental processes or impairs his reactions to an appreciable degree, thereby lessening his ability to operate a motor vehicle." *City of Toledo v. Starks*, 25 Ohio App.2d 162, 163, 267 N.E.2d 824, 825–26 (1971).

■ Such a determination is made by reference to all relevant circumstances, including a person's blood-alcohol level. *State v. Lowman*, 82 Ohio App.3d 831, 836, 613 N.E.2d 692 (1992) (totality of the circumstances test employed). Although each case is unique, thus making it impossible to give a complete list, common indicia of intoxication may include those observations made by law enforcement at the time of the alleged transgression. *See In re Phalen*, 145 B.R. at 555 (observations of police officer used as evidence to support a finding of intoxication under § 523(a)(9)). For example, the smell of alcohol on the defendant's breath, erratic driving, loss of balance and poor coordination, blood shot eyes and slurred speech.

In this matter, however, no such indicia were brought to the Court's attention. Instead, as proof of the Defendant's intoxication, the Plaintiff relies simply on the Debtor's blood-alcohol level together with the fact that he should have been aware of his duty to stop at the intersection in question. In other words, it is the Plaintiff's position that "but for" the alcohol in his system, the Defendant would have properly stopped at the intersection, thus qualify the Defendant as "under the influence of alcohol" for purposes of O.R.C. § 4511.19(A)(1)(a).

■ As put forth by the Plaintiff, an accident which exhibits a lack of good driving judgment on the part of the defendant may be used as evidence of intoxication. *See generally, State v. Carmical*, 110 Ohio Misc.2d 4, 742 N.E.2d 1221, 1223–24 (Ohio Mun.2000). The difficulty here, however, is not whether the Defendant exhibited a lack of good driving judgment—clearly he did, as shown by his failure to stop at a clearly marked intersection—or whether the Defendant had previously consumed alcohol—the Defendant admitted to drinking a number of beers the night before the accident—but whether the Court may consider the evidence showing that the Defendant had alcohol in his system at the time of the Parties' accident.

When, in a matter involving the operation of a motor vehicle while intoxicated, evidence of a person's blood-alcohol level is sought to be utilized, paragraph (D) of § 4511.19 sets out a two-hour limitation on the collection of bodily substances for testing, with the time of the violation (in this case, the Parties' accident) being the point at which the clock begins to run. As applied to this matter, however, the blood test conducted on the Defendant falls a full 21 minutes outside this time limitation. In terms of actual numbers, the evidence presented in this case shows that the latest possible time for the occurrence of the Parties' accident was 6:54 a.m.—the time at which the police were dispatched—while the blood sample was not drawn from the Defendant until 9:15 a.m. (Plaintiff's Ex. No. 4).

When applied to a matter not involving a per se violation of § 4511.19, the Supreme Court of Ohio explained the implications of the failure to perform an alcohol test within the two-hour time frame as follows:

the fact that a bodily substance is withdrawn more than two hours after the time of the alleged violation does not, by itself, diminish the probative value of the test results in an R.C. 4511.19(A)(1) prosecution.

However, in introducing such results, expert testimony, as was proposed by the prosecution in the instant case, would be necessary to relate the test results to the defendant and to the time of the alleged violation, as well as to relate the numerical figure representing a percentage of alcohol by weight in the bodily substance, as shown by the results of the chemical test, to the common understanding of what it is to be under

the influence of alcohol. Naturally, as in any action brought pursuant to R.C. 4511.19, the defendant would have the opportunity to challenge the accuracy of his specific test results.

We therefore hold that in a criminal prosecution for violation of R.C. 4511.19(A)(1), or of a municipal ordinance relating to operating a motor vehicle while under the influence of alcohol, a drug of abuse, or alcohol and a drug of abuse, the results of a properly administered bodily substances test presented with expert testimony may be admitted in evidence despite the fact that the bodily substance was withdrawn more than two hours from the time of the alleged violation.

*Newark v. Lucas*, 40 Ohio St.3d 100, 104–05, 532 N.E.2d 130, 134–35 (1988) (internal citations omitted).

■ Thus this decision makes it clear that when bodily substances are used to conduct an alcohol test, expert testimony is required if the bodily sample, from which the alcohol test is conducted, is withdrawn from the defendant more than two hours from the time of the alleged violation. In this case, however, only the Parties testified; no expert testimony was offered. As a result, while the Court in *Newark v. Lucas* does specifically reference criminal prosecutions, nothing in the decision was put forth to suggest that it would not be equally applicable when a person's intoxication under § 4511.19(A)(1) is placed at issue in a civil matter. Thus, so as to comply with the Ohio Supreme Court's clear mandate in *Newark v. Lucas*, evidence of the Defendant's blood-alcohol level is inadmissible.

As such, the only evidence before the Court with which to establish the Defendant's intoxication is, first, his own admission to drinking a number of beers the night before the accident, and second, his lack of good driving judgment. Alone, however, these facts, while not exactly indicative of a prudent and responsible person, do not support a finding that the Defendant was driving while "under the influence of alcohol" when applied to § 4511.19(A)(1). It therefore follows that the Plaintiff has failed to sustain her burden of showing that, as applied to § 523(a)(9), the Defendant caused injury to her while operating a motor vehicle while intoxicated.

■ Notwithstanding, the Plaintiff also argued that given the circumstances of this case, the Court should exercise its equitable powers under 11 U.S.C. § 105(a) so as to hold the debt at issue nondischargeable. And, on equitable circumstances alone, this Court is inclined to agree—at the very least the circumstances presented in this case show that the Defendant, having admittedly consumed a number of beers the night before, did not have all his mental faculties together at the time of the accident. However, the United States Supreme Court has held that a bankruptcy court may only exercises its equitable powers under § 105(a) "within the confines of the Bankruptcy Code." *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988). It therefore must follow that since specific provisions already speak to those categories of debts which the Congress of the United States deemed should not enjoy the benefits of a bankruptcy discharge, § 105(a) cannot be employed so as to transform an otherwise dischargeable debt into a nondischargeable debt. *Accord Miller v. Penn. Higher Educ. Asst. Agency (In re Miller)*, 377 F.3d 616 (6th Cir.2004) (§ 105 may not be used as an independent authority to partially discharge a student-loan obligation.)

In reaching the conclusions found herein, the Court has considered all of the

evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

**ORDERED** that any claim that the Plaintiff, Jamie Hrynciw, holds against the Defendant, Daniel Ross Crump, as the result of the auto accident that occurred on or about July 27 of the year 2000, be, and is hereby, determined to be a DISCHARGEABLE DEBT.

It is **FURTHER ORDERED** that the Complaint of the Plaintiff, Jamie Hrynciw, be, and is hereby, DISMISSED.